**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Sherman WILSON,**
**Defendant-Appellant.**

No. 85–5051.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 5, 1985.

Decided Feb. 10, 1986.

James Walsh, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

J. Brendon O'Neill, Santa Monica, Cal., for defendant-appellant.

Before GOODWIN, SCHROEDER and BOOCHEVER, Circuit Judges.

PER CURIAM:

This prosecution arose from the appellant Wilson's attempt to manufacture the controlled substance phencyclidine (PCP). PCP is manufactured from another controlled substance, piperidine, and such manufacture requires two steps. The first is mixing the piperidine with other, non-controlled, chemicals to form a compound known as PCC. PCC is also a controlled substance. The PCC is then added to other chemicals to produce PCP.

Wilson undertook to manufacture the PCP at the urging of a government undercover agent who furnished him with the necessary piperidine. At the time of his arrest, Wilson had transformed the piperidine into PCC, but had not yet begun the

second step to produce PCP. He was therefore in possession only of PCC.

Wilson was tried and convicted of three crimes: possession of piperidine with knowledge that it would be used to manufacture PCP (21 U.S.C. § 841(d)(2)); manufacturing PCC (21 U.S.C. § 841(a)(1)); and attempting to manufacture PCP (21 U.S.C. §§ 841(a)(1), 846).

He was sentenced to ten years for attempting to manufacture PCP, five years for manufacturing PCC, and five years for possessing piperidine. The three sentences were to run consecutively. The two five-year sentences were suspended with a five-year probationary term for each count to be appended following Wilson's release from prison on the attempting to manufacture PCP count. In addition, the court imposed five-year special parole terms for each count.

Wilson filed a motion challenging the legality of the consecutive sentences on the authority of *United States v. Oropeza,* 564 F.2d 316 (9th Cir.1977), *cert. denied,* 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 788 (1978) (holding that in making it a crime both to possess a controlled substance with intent to distribute it, and to distribute, Congress did not intend to punish twice the individual who necessarily possessed a substance before successfully distributing it). The district court denied the motion. Wilson appealed, and we asked the parties to address in their oral arguments this court's recent decision in *United States v. Palafox,* 764 F.2d 558 (9th Cir.1985) (en banc).

In *Palafox,* we held that where Congress creates different crimes aimed at successive stages of a single criminal undertaking, the defendant can properly be charged and found guilty of multiple offenses, but may be punished only for the commission of one offense. *Palafox,* 764 F.2d at 562 (involving the distribution of a heroin sample and the retention of the remainder of the heroin for immediate distribution to the same recipients at the same place and at the same time). *See also United States v. Touw,* 769 F.2d 571 (9th Cir.1985).

*Palafox* followed the approach taken by the Supreme Court in *Prince v. United States,* 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), which held that although Congress had criminalized both the entering of a bank with intent to rob it and the robbery itself, it did not intend to multiply the punishments. *Prince* has been followed without division by other Circuits in cases involving multiple penalties for possession with intent to distribute and distribution under 21 U.S.C. § 841(a)(1). *See, e.g., United States v. Gomez,* 593 F.2d 210 (3d Cir.) (en banc), *cert. denied,* 441 U.S. 948, 99 S.Ct. 2172, 60 L.Ed.2d 1052 (1979); *United States v. Hernandez,* 591 F.2d 1019 (5th Cir.1979) (en banc); *United States v. Oropeza,* 564 F.2d 316 (9th Cir.1977), *cert. denied,* 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 788 (1978); *United States v. Olivas,* 558 F.2d 1366 (10th Cir.), *cert. denied,* 434 U.S. 866, 98 S.Ct. 203, 54 L.Ed.2d 142 (1977); *United States v. Stevens,* 521 F.2d 334 (6th Cir.1975); *United States v. Curry,* 512 F.2d 1299 (4th Cir.), *cert. denied,* 423 U.S. 832, 96 S.Ct. 55, 46 L.Ed.2d 50 (1975).

In this case it is clear that Congress criminalized piperidine possession and PCC manufacture because those activities are intermediate steps of the manufacture of PCP. The parties agree that the only evil associated with piperidine is that chemical's use in the making of PCP. The legislative history indicates that the regulation of piperidine was undertaken for the purpose of "reducing the illicit manufacture, distribution, and use of PCP." *Joint Explanatory Statement of Titles II and III,* 124 Cong. Rec. S 17647 (1978), *reprinted in* 1978 U.S. Code Cong. & Ad.News 9518, 9519. Similarly, the only illicit use of PCC is as an ingredient in PCP. PCC was made a controlled substance by regulation, the explicit purpose of which was to "prevent, curtail or limit the manufacture of PCP." 43 Fed. Reg. 11588 (1978). The criminal provisions here, as in *Prince,* were thus intended to insure that individuals who embark upon a course of criminal conduct, but who are frustrated before committing the ultimate act, do not escape punishment. However, there is no reason to hold here, any more than there was in *Prince,* that Congress intended multiple punishments for the

criminal who completes more than one step of the crime.

In this case, defendant began, but did not complete the process of manufacturing PCP; only one manufacturing process was involved. The counts with which the defendant was charged here were thus all successive steps of one criminal undertaking, and similar to the successive steps involved in *Prince* and *Palafox*. We therefore hold, in accordance with our decision in *Palafox*, that the defendant was properly charged and tried on separate counts for each step, but that he could be convicted and sentenced for only one.

We therefore vacate the judgments of conviction and sentences on counts I and II and order their entries stayed pending completion of the sentence on count III, the attempt to manufacture PCP. Upon completion of the sentence on Count III, the stays shall become permanent. *See Touw*, 769 F.2d at 574; *Palafox*, 764 F.2d at 564. The five-year terms of probation are vacated. The practical effect of our holding is to leave intact the ten-year prison term and one five-year special parole term. The term of incarceration ordered by the district court is thus not affected.

Affirmed in part, reversed in part.