**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Hoyt FORESTER, Defendant–Appellant.**

**No. 87–5515.**

United States Court of Appeals, Fifth Circuit.

Jan. 19, 1988.

R. Clark Adams, Asst. Federal Public Defender, Lucien B. Campbell, Federal Public Defender, San Antonio, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Janet E. Bauerle, Asst. U.S. Attys., Helen M. Eversberg, Mitchell Weidenbach, U.S. Atty., San Antonio, Tex., for U.S.

Before GOLDBERG, POLITZ, and DAVIS, Circuit Judges.

POLITZ, Circuit Judge:

Convicted of attempt to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846, and of possession of phenyl-2-proponone (P₂P) with intent to manufacture methamphetamine in violation of 21 U.S.C. § 841(a)(1), Hoyt Forester appeals, contending that his rights under the Speedy Trial Act, 18 U.S.C. § 3161, were violated and that he was sentenced improperly to consecutive prison terms for the two offenses. We conclude that the terms of the Speedy Trial Act were complied with but that sentencing on both counts was improper. Accordingly, we affirm the convictions, but we vacate the sentences and remand for sentencing on one of the two counts.

*Background*

On the evening of February 18, 1986, agents of the Drug Enforcement Administration, acting on a tip, made an external inspection of the apartments in a quadraplex in San Antonio, Texas. They detected the distinctive odor of phenyl-2-proponone, a Schedule II controlled substance, emanating from one of the garages. Several hours later the agents secured and executed a search warrant for Apartment 103, 15014 Spring Creek, San Antonio, and found a clandestine chemical laboratory in its garage.

The laboratory contained a variety of equipment including vacuum pumps, alu-

minum beverage canisters, typical laboratory glassware, a Buchner funnel, ringstands, tubing, hot plates, filter paper, large plastic joints, gas masks and a triplebeam balance scale. A substantial amount of chemicals essential to the manufacture of methamphetamines was discovered, including methylamine, mercuric chloride, hydrochloric acid, benzene, acetic anhydride, acetone, and isopropyl alcohol. A quantity of aluminum foil was found.

The agents found a beverage cooler, set at $0°$ centigrade, containing several flasks of varying concentration of chilled $P_2P$. $P_2P$ is formed by the reaction of acetic anhydride and benzene, with a reaction time of 8 to 18 hours. When combined with the foregoing chemicals and aluminum, $P_2P$ can be transformed into finished methamphetamine in an additional 12 to 20 hours. Other than a trace amount, no methamphetamine was found. The $P_2P$, chemicals, and supplies present were sufficient to produce approximately 15 pounds of methamphetamine.

No one was on the premises when the warrant was executed, but a search of the apartment revealed evidence of current habitation, including male and female clothing in the bedroom, personal hygiene products in the bathroom, and food in the refrigerator. The officers also found a lease agreement for the apartment in Forester's name as well as mail addressed to him.

Forester voluntarily surrendered and was arrested the next day. On March 5, 1986, a grand jury indicted him on one count of attempt to manufacture methamphetamine. Forester waived arraignment and filed various pretrial motions. On April 16, 1986, a two-count superseding indictment was handed up. Count One charged Forester with attempt to manufacture methamphetamine. Count Two charged Forester with possession of $P_2P$ with intent to manufacture methamphetamine. After resolution of various pretrial motions, trial began on September 9, 1986. The court rejected a motion to dismiss under the Speedy Trial Act and the case was submitted to a jury. Forester was found guilty on both counts, and the court sentenced him to six years imprisonment on Count One, and a like term plus a special parole term of four years on Count Two, with the sentences to run consecutively. The court also imposed a $50 assessment on each count pursuant to 18 U.S.C. § 3013. Forester timely appealed.

*Analysis*

I. *Speedy Trial Act*

■ Forester contends that the indictment should have been dismissed because the government failed to comply with the time constraints of the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.* The statute provides in pertinent part:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1).

If the government fails to comply with this 70–day time limit, the indictment must be dismissed. 18 U.S.C. § 3162(a)(2). In calculating the 70–day period, however, the Act provides for exclusion of periods of necessary delay incident to routine processing of a criminal case. Included in this excludable time is the reasonable delay involved in pretrial motion practice. 18 U.S.C. § 3161(h)(1)(F).

Forester contends that calculation of the 70–day period should begin on March 5, the date of the first indictment. Based on his calculation of excludable time, Forester concludes that his trial began on the 78th day. Assuming, without deciding, that the Speedy Trial clock started on the date of the first indictment, we nevertheless find that the trial began before expiration of the statutory limit.

An examination of the record reflects that on March 27, 1986 the government filed a motion for reciprocal discovery. On April 7 Forester responded but complained

that the prosecutor had failed to comply with an earlier discovery order. On April 17 the government moved for an order directing Forester to provide handwriting exemplars. On April 23 the court granted both the motion for reciprocal discovery and that for exemplars. Forester contends that the period between April 7 and April 17 should not have been excluded from the 70–day count because the discovery motion was self-effectuating and entry of the order therefore was superfluous. We do not agree.

The Supreme Court has made clear that when a motion is presented to the trial court, the court has 30 days to enter its ruling. 18 U.S.C. § 3161(h)(1)(F), (J). *Henderson v. United States*, 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986); *United States v. Horton*, 705 F.2d 1414 (5th Cir.), *cert. denied*, 464 U.S. 997, 104 S.Ct. 496, 78 L.Ed.2d 689 (1983). The court acted within this time frame and the time taken to reach a ruling was excludable. 18 U.S.C. § 3161(h)(1)(F). Were we to accept uncritically Forester's time calculations, we would conclude nevertheless that the trial was commenced timely and that the trial court properly rejected Forester's Speedy Trial motion.

## II. *Consecutive Sentences*

Forester's challenge to the sentencing presents a more serious question. He maintains that the indictment charged and the evidence established a single, ongoing, abortive attempt to manufacture methamphetamine, and although he could be charged validly with both counts, he could be sentenced only for either the possession count or the attempt count.

Forester's argument derives from the double jeopardy clause of the fifth amendment. He contends that he was sentenced twice for what was essentially, in law and in fact, one offense. Under the specific, limited, and sharply defined facts of this case, we agree that he could not be sentenced on both counts.

1. *See* note 2, *infra*.

It cannot be gainsaid that different crimes may be committed during the course of one incident or transaction. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *United States v. Young*, 482 F.2d 993 (5th Cir.1973). The essential requisite is that each offense involve at least one element not required of the other. *Blockburger; United States v. Hernandez*, 591 F.2d 1019 (5th Cir.1979) (en banc).

In the instant case the evidence demonstrates that Forester had set about to commit the criminal offense of manufacturing methamphetamine. The $P_2P$ found by the agents was an interim and indispensable step in that manufacturing process. By virtue of the chemical reaction string, Forester first produced $P_2P$, a precursor for methamphetamine. $P_2P$ is not a substance used for abuse but, rather, is a solvent typically used in pharmaceutical and explosives manufacture. That the government recognized the production of $P_2P$ was only a way-station on the road to methamphetamine production is reflected in the prosecutor's comments during closing argument. He then stated: "Phenyl-2–proponone is the necessary ingredient, the next step to the ultimate product, which is methamphetamine ... What else do you produce or manufacture the $P_2P$ for but to make the methamphetamine."

It is important to underscore what this case does not involve. It does not involve a situation in which the defendant purchased or otherwise acquired a supply of $P_2P$ for either distribution or later use in the manufacture of methamphetamine.[1] It does not involve the manufacture of $P_2P$ for distribution. It does not involve the possession with intent to distribute or the actual distribution of $P_2P$. Rather, it involves a scheme to manufacture methamphetamine through a sequential series of chemical reactions.

In the setting of this case, the transient presence of the $P_2P$ was part of one planned, programmed, and actual criminal continuum, the manufacture of methamphetamine by seriate chemical reactions.

Quoting a 19th Century authority, the Supreme Court observed earlier this century that "[j]eopardy is not the same when the two indictments are so diverse as to preclude the same evidence from sustaining both." *Gavieres v. United States*, 220 U.S. 338, 343, 31 S.Ct. 421, 423, 55 L.Ed. 489, 490 (1911). The two counts before us are not so diverse as to preclude the same evidence from sustaining both; indeed the opposite is manifest.

In *United States v. Hernandez*, sitting *en banc* we considered whether a single sale of heroin to an undercover agent could support both a charge of possession with intent to distribute heroin and a charge of distribution of heroin. We concluded that "[t]he sentence for possession with intent to distribute combined with the consecutive sentence for distribution imposes double punishment for conduct that, under the facts of this case, merges into a single offense." 591 F.2d at 1022. In reaching this conclusion we were guided by the Supreme Court's teachings in *Prince v. United States*, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957). In *Prince* the Court held consecutive sentences improper where the defendant was separately charged under 18 U.S.C. § 2113 with both bank robbery and entering the bank with intent to commit a felony. The bank robbery charge subsumed the entry charge. The Court concluded that although Congress intended to and had made both entry into a bank with intent to rob and robbery of the bank criminal offenses, it did not intend thereby to multiply the punishment.

Our colleagues in the Ninth Circuit recently decided a factually similar case. Their decision is helpful. In *United States v. Wilson*, 781 F.2d 1438 (9th Cir.1986), the defendant had possession of piperidine, a controlled substance, which he used to form a compound known as PCC, also a controlled substance, which was added to other chemicals to produce the controlled substance phencyclidine (PCP). He was charged and convicted with possession of piperidine, with knowledge it would be used to manufacture PCP; manufacture of PCC; and attempt to manufacture PCP. He received consecutive sentences on the three offenses. Citing its earlier *en banc* decision in *United States v. Palafox*, 764 F.2d 558 (9th Cir.1985), which relied on the *Prince* rationale and holding, our colleagues concluded that Wilson could be charged and tried on the three separate counts but that he could be convicted and sentenced on only one.[2] This conclusion was based on the finding that piperidine was criminalized only because it was a precursor to the harmful PCP, and that PCC had been made a controlled substance only because of its illicit use in the manufacture of PCP. In explaining their resolution the *Wilson* panel stated:

The criminal provisions here, as in *Prince*, were thus intended to insure that individuals who embark upon a course of criminal conduct, but who are frustrated before committing the ultimate act, do not escape punishment. However, there is no reason to hold here, any more than there was in *Prince*, that Congress intended multiple punishments for the criminal who completes more than one step of the crime.

In this case, defendant began, but did not complete the process of manufacturing PCP; only one manufacturing process was involved. The counts with which the defendant was charged here were thus all successive steps of one criminal undertaking, and similar to the successive steps involved in *Prince* and *Palafox*. We therefore hold, in accordance with our decision in *Palafox*, that the defendant was properly charged and tried on separate counts for each step, but that he could be convicted and sentenced for only one.

781 F.2d at 1439–40.

And so it is in the case at bar. The two counts against Forester involve successive

---

2. While we agree with the Ninth Circuit's analysis and conclusion as to the PCC count, we are not necessarily in accord with their ruling on the possession of piperidine count. The legal effect of Forester possessing the P2P, other than as the product of an interim chemical reaction in the manufacture of methamphetamine, is not now before us and we express no opinion thereon.

steps in one criminal undertaking, the manufacture of methamphetamine. And although it is obvious that Congress made each offense a crime, no reason is suggested to us, and we are aware of none, which would support the proposition that Congress intended multiple punishments for the criminal who completes more than one interim step of a multi-step crime.

We conclude that on the facts here presented, the interim production of the $P_2P$, as an integral part of the chemical reactions involved in the manufacture of methamphetamine, was a separate crime from either the manufacture or attempt to manufacture methamphetamine. Separate charges were permissible. Separate convictions were possible. But only one sentence is appropriate.

The convictions are AFFIRMED. The sentences are VACATED, and the matter is REMANDED to the trial court for resentencing on one of the two counts.