

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-11-2003

# USA v. Chorin

Precedential or Non-Precedential: Precedential

Docket 01-3544

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation
"USA v. Chorin" (2003). *2003 Decisions.* Paper 689.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/689

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed March 11, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 01-3544/3574

UNITED STATES OF AMERICA

v.

DAVID CHORIN
a/k/a
CHARLIE

David Chorin,
        *Appellant in No. 01-3544*

UNITED STATES OF AMERICA

v.

KEVIN ROBERT CADEN
a/k/a

THOMAS KIMBLE

Kevin Robert Caden,
        *Appellant in No. 01-3574*

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action Nos. 98-cr-00450-1 & 2)
District Judge: Honorable J. Curtis Joyner

Argued on December 2, 2002

Before: ROTH, SMITH, *Circuit Judges*
and CUDAHY*, *Circuit Judge*

(Filed: March 11, 2003)

Patrick L. Meehan
United States Attorney
Eastern District of Pennsylvania

Laurie Magin
Deputy United States Attorney
for Policy and Appeals

Robert A. Zaumer
Assistant United States Attorney
Senior Appellate Counsel

Dina A. Keever
Michael L. Levy (Argued)
Office of the United States Attorney
615 Chestnut Street
Philadelphia, PA 19106

*Attorneys for Appellee*

Arthur R. Shuman, Esquire (Argued)
8312 Hull Drive
Wyndmoor, PA 19038-7514

---

*The Honorable Richard D. Cudahy, Circuit Court Judge for the Seventh
Circuit, sitting by designation.

Jose L. Ongay, Esquire (Argued)
521 South Second Street
Philadelphia, PA 19147

*Attorneys for Appellants*

## OPINION OF THE COURT

ROTH, *Circuit Judge*:

Defendants Kevin Caden and David Chorin appeal the judgments of sentence imposed in the Eastern District of Pennsylvania on September 13, 2001. The District Court imposed consecutive sentences on defendants' convictions of possession of a precursor and attempt to manufacture a controlled substance. Both defendants argue that the imposition of consecutive sentences, which resulted in an aggregate sentence that exceeds the statutory maximum for either individual count, violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Caden also argues that, even if the imposition of consecutive sentences did not violate *Apprendi*, it was not called for in this case because the District Court's determination of the quantity of drugs involved was erroneous. Finally, Chorin argues that the imposition of consecutive sentences violates the Double Jeopardy Clause, that the government failed to turn over exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), that he is entitled to a new trial based on newly discovered evidence, that 21 U.S.C. § 841 is facially unconstitutional, and that the District Court abused its discretion in denying his motion for a new trial based on ineffective assistance of counsel. For the reasons stated below, we will affirm.

## I. Facts and Procedural History

On November 17, 1999, a second superseding indictment charged Kevin Caden and David Chorin with attempt to manufacture more than one kilogram of methamphetamine in August 1998 in violation of 21 U.S.C. § 846 (Count One), and possession of monomethylamine between March 1997 and October 1998, knowing, or having reasonable cause to

believe, that it would be used to manufacture methamphetamine in violation of 21 U.S.C. § 841(d)(2) (Count Three). The second superseding indictment also charged Caden with possession of 40 grams or more of phenyl-2-propanone ("P2P") in August 1998 in violation of 21 U.S.C. § 841(a)(1) (Count Two).[1]

At the trial, which commenced on December 1, 1999, agents of the Drug Enforcement Administration ("DEA") testified that they executed a search warrant at 258 East Hortter Street in Germantown on August 12, 1998. Caden, the tenant of the property, was present during the search. The agents discovered a gas cylinder with methylamine gas, a precursor to methamphetamine. They also found methylamine in liquid form, P2P, aluminum foil, "cooking" pots, ethanol, cutting agents, distilled water, a pH meter, mercuric chloride, baby bottle liners, a recipe of how to manufacture methamphetamine, and methamphetamine. An expert DEA chemist testified that this constituted a methamphetamine laboratory.

The agents also testified that in mid-October 1998, they searched 5803 Woodland Avenue in Philadelphia. They encountered Chorin and evidence that Chorin lived at 5803 Woodland Avenue. The DEA agents also found a tank of methylamine gas, dry ice, mercuric chloride, and an Ohaus scale. At trial, the DEA chemist testified that these items, except mercuric chloride,[2] are used to convert methylamine gas to methylamine liquid, which is used to manufacture methamphetamine. Based on the serial numbers found on the gas cylinders recovered in Philadelphia and Germantown, DEA agents searched Scully Welding and Supply. This search revealed that the cylinders from both locations were sold to a Thomas Kimble, which is the same name Caden used to rent the Germantown property.

At trial, Manfred DeRewal and Edmund Gifford, two inmates who had conversations with Chorin while

---

1. Cadin and Chorin originally were indicted separately on September 9, 1998. A superseding indictment charging both men was issued on November 4, 1998.

2. The DEA chemist testified that mercuric chloride is used later in the process of manufacturing methamphetamine.

incarcerated, also testified. DeRewal testified that, while he and Chorin were incarcerated at Passaic County Jail, Chorin told DeRewal that he had been converting methylamine gas into methylamine liquid in Philadelphia and that he had manufactured methamphetamine in Germantown. Likewise, Gifford testified that, while he and Chorin were incarcerated at Philadelphia County Prison, Chorin told Gifford that he and "a partner" rented cylinders from Scully Supply to manufacture methylamine liquid. Chorin told Gifford that he had sold ten gallons of methylamine liquid in Philadelphia the night before his arrest for $30,000, and that he had manufactured methamphetamine with another associate in Germantown.

The jury convicted both Caden and Chorin on all counts. Since the trial occurred before the Supreme Court's decision in *Apprendi*, the jury did not determine the amount of controlled substances involved. On the contrary, the District Court charged the jury that "[i]t is not necessary for the Government to prove that a specific amount or quantity of the controlled substance or listed chemical was possessed."

Caden and Chorin were sentenced on September 13, 2001, after *Apprendi* was decided. At a sentencing hearing to determine the quantity of drugs involved, DEA chemist Charles Cusumano testified that, based upon the amount of methylamine found at the two locations, the laboratories were capable of producing about 73.2 kilograms of pure methamphetamine. On cross-examination, Cusumano admitted that it was possible that, during the cooling process required to convert methylamine gas into methylamine liquid, some methylamine could evaporate, reducing the final amount of methylamine liquid. The District Court credited Cusumano's testimony and found that the amount of methamphetamine that could be produced from the methylamine was 73.2 kilograms. Based on this quantity, the guidelines called for a sentence of 360 months for Caden and 324 months for Chorin on Count One. In order to avoid violating *Apprendi*, the District Court sentenced both Caden and Chorin to 240 months on Count One, which is the statutory maximum for manufacture of methamphetamine regardless of the quantity. *See* 21 U.S.C. § 841(c).

The District Court then imposed consecutive sentences pursuant to United States Sentencing Guideline ("U.S.S.G.") § 5G1.2(d). Caden received a sentence of 120 months on Count Two and Count Three. The sentences on these two counts were to run consecutive to the sentence on Count One and concurrent with each other. Chorin received a sentence of 84 months on Count Three to run consecutive to the sentence imposed on Count One.

In between the verdict and sentencing, Chorin filed a motion claiming that the government violated *Brady* by not disclosing allegedly exculpatory evidence provided by Andrew Sidebotham, a government cooperator. The District Court denied the motion. Eight months after the verdict but before sentencing, Chorin, who had obtained new counsel after the verdict, also moved for a new trial based upon ineffective assistance of trial counsel. The District Court denied this motion. Following their sentence, Caden and Chorin filed timely appeals.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction over this criminal case involving offenses against the laws of the United States pursuant to 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's legal conclusions and apply a clearly erroneous standard to its factual findings. *See Cradle v. United States*, 290 F.3d 536, 538 (3d Cir. 2002) (per curiam). The scope of review over the District Court's denial of Chorin's motion for a new trial is abuse of discretion. *See United States v. Iannelli*, 528 F.2d 1292, 1290 (3d Cir. 1976).

## III. Discussion

1. *Apprendi* and Drug Quantity Calculation Claims

The District Court did not violate *Apprendi* by sentencing Caden and Chorin to consecutive sentences on Count One and Count Three pursuant to U.S.S.G. § 5G1.2(d). Under 18 U.S.C. § 3584(a), if multiple terms of imprisonment are imposed on a defendant at the same time, the terms may

run concurrently or consecutively. In determining whether to run sentences consecutively or concurrently, a District Court should consult the Sentencing Guidelines. *See* 28 U.S.C. § 994(a)(1)(D). The Sentencing Guidelines provide that:

> If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law.

U.S.S.G. § 5G1.2(d). The "total punishment" is determined by the adjusted combined offense level. *See* U.S.S.G. § 5G1.2 cmt. In this case, the offense level for Count One called for a sentence of 360 months for Caden and 324 months for Chorin. In order to avoid violating *Apprendi* by exceeding the statutory maximum of 20 years under 21 U.S.C. § 841 for manufacture of methamphetamine without reference to quantity while complying with U.S.S.G. § 5G1.2(d), the District Court sentenced both Caden and Chorin to 240 months on Count One and consecutive sentences of 120 months and 84 months respectively on Count Three.

Caden and Chorin argue that the resulting aggregate consecutive sentences of 360 months for Caden and 324 months for Chorin violate *Apprendi* because both exceed the 20 year statutory maximum authorized by Count One. Under *Apprendi*, any fact, other than the fact of a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *See* 530 U.S. at 490. *Apprendi* addresses the unconstitutional practice of a sentencing judge imposing a sentence that exceeds the statutory maximum sentence authorized by the jury based on facts that were not submitted to a jury and proved beyond a reasonable doubt. *See* 530 U.S. at 490. It does not address the sentencing procedure used pursuant to the Sentencing Guidelines to reach a sentence, provided that

the resulting sentence does not exceed the statutory maximum sentence authorized by the jury verdict. *See United States v. DeSumma*, 272 F.3d 176, 181 (3d Cir. 2001), *cert. denied*, 122 S.Ct. 1631 (2002) (holding that the imposition of a two level obstruction of justice enhancement does not implicate *Apprendi*, so long as the resulting sentence is below the statutory maximum). Indeed, there is "no constitutionally cognizable right to concurrent, rather than consecutive, sentences." *United States v. White*, 240 F.3d 127, 135 (2d Cir. 2001), and the Supreme Court has recognized that there is a presumption that, when Congress creates two distinct offenses, it intends to permit cumulative sentences. *See Garrett v. United States*, 471 U.S. 773, 793 (1985).

Therefore, *Apprendi* is not implicated by the District Court's imposition of consecutive sentences pursuant to U.S.S.G. § 5G1.2(d) on Count One and Count Three because these sentences do not exceed the statutory maximum authorized by the jury verdict of guilty on Count One, Count Two, *and* Count Three. Caden and Chorin are comparing apples to oranges by comparing their aggregate consecutive sentences to the statutory maximum authorized for individual counts. The *Apprendi* decision itself suggests that the issue of consecutive sentencing is irrelevant to the constitutional determination of whether a sentencing court has exceeded the statutory maximum for the particular count in question. *See Apprendi*, 530 U.S. at 474.

Apprendi pled guilty to two counts (Count 3 and Count 18) of second-degree possession of a firearm for an unlawful purpose in violation of N.J. Stat. Ann. § 2C:39-4(a), and one count (Count 22) of the third-degree offense of unlawful possession of an antipersonnel bomb in violation of N.J. Stat. Ann. § 2C:39-3a. The prosecutor dismissed the other 18 counts. *See id.* at 469-70. The statutory maximum sentence for Count 18 was 10 years under New Jersey law. However, applying a "hate crime" enhancement, which permitted a trial judge to apply an extended term for second-degree offenses of up to 20 years if the judge finds by a preponderance of the evidence that the crime was a hate crime, the trial judge sentenced

Apprendi to a 12 year term of imprisonment on Count 18 and shorter concurrent sentences on the other two counts. *See id.* at 468-71. The Supreme Court held that this sentencing was unconstitutional because a fact, namely Apprendi's racial motivation, which increased the penalty for Count 18 beyond the prescribed statutory maximum, had not been submitted to a jury and proved beyond a reasonable doubt. *See* 530 U.S. at 490.

In rejecting the government's argument that there was no constitutional violation because the trial court could have achieved the same result by sentencing Apprendi to consecutive sentences, the Supreme Court held:

> The constitutional question, however, is whether the 12-year sentence imposed on count 18 was permissible, given that it was above the 10-year maximum for the offense charged in that count. . . . The sentences on counts 3 and 22 have no more relevance to our disposition than the dismissal of the remaining 18 counts.

*Apprendi*, 530 U.S. at 474. Thus, the Supreme Court's concern in *Apprendi* is with whether the sentencing court exceeds the statutory maximum sentence authorized for a particular count; it ignores the effect of consecutive sentencing. As the two other Courts of Appeals that have faced this issue have concluded based on *Apprendi*, "[t]he district court's use of section 5G1.2(d) did not result in a sentence on any one count above the maximum available on that count . . . , and so did not violate *Apprendi*. We therefore find no error in the district court's application of section 5G1.2(d)." *White*, 240 F.3d at 135; *see also United States v. McWaine*, 290 F.3d 269, 275-76 (5th Cir.), *cert. denied*, 123 S.Ct. 311 (2002).

Caden argues that, even if the District Court did not violate *Apprendi*, its determination that the amount of controlled substance involved placed Caden at offense level 38 is clearly erroneous, and thus its determination that the 20 year sentence on Count One was less than the total punishment also was erroneous. Under U.S.S.G. § 2D1.1, when no controlled substances are seized, the District Court is to approximate the quantity of controlled

substance based on, *inter alia*, "the size or capability of any laboratory involved." *Id.* Based on the testimony of DEA Chemist Cusumano, who testified that the amount of methylamine found at the two labs would produce 73.2 kilograms of pure methamphetamine, the District Court found that Caden's Offense Level was 38. Caden presented no evidence to contradict Cusumano's findings. Rather, Caden argues that the actual amount involved was lower than 73.2 kilograms because he could have sold some of the methylamine and Cusumano admitted that some methylamine gas could have evaporated during the cooling process. However, the District Court's determination was not clearly erroneous because only 3 kilograms of actual methamphetamine are required to place Caden at base offense level 38, *see* U.S.S.G. § 2D1.1(c), and Caden produces nothing to suggest that 70.2 kilograms would be lost due to either factor.

Caden also argues that Cusumano improperly based his conclusions on the amount of methylamine found because there was an insufficient amount of P2P, another precursor, to produce 73.2 kilograms of methamphetamine. However, as other Courts of Appeals have held, a District Court is not limited to the precursor in the smallest amount. *See United States v. Smith*, 240 F.3d 927, 931 (11th Cir. 2001), *cert. denied*, 123 S.Ct. 479 (2002); *United States v. Anderson*, 236 F.3d 427, 429 n. 5 (8th Cir.), *cert. denied*, 122 S.Ct. 356 (2001); *United States v. Lillard*, 929 F.2d 500, 504 (9th Cir. 1991). Rather, a District Court may estimate the amount of controlled substance that a defendant could manufacture from the precursor he possessed if he combined that precursor with the proportionate amount of missing ingredients. *See Smith*, 240 F.3d at 931; *United States v. Becker*, 230 F.3d 1224, 1234-35 (10th Cir. 2000), *cert. denied*, 532 U.S. 1000 (2001); *United States v. Smallwood*, 920 F.2d 1231, 1238 (5th Cir.), *cert. denied*, 501 U.S. 1238 (1991).

*2. Double Jeopardy Claim*

We conclude that sentencing Chorin to consecutive sentences based on his possession of a precursor and attempt to manufacture a controlled substance did not violate the Double Jeopardy Clause because Chorin was

involved in more than one criminal undertaking. The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Multiple punishment for the same offense at a single trial is forbidden by the Double Jeopardy Clause. *See North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds Alabama v. Smith*, 490 U.S. 794 (1989).[3]

The "Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983). "Thus, the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed. Where congress intended . . . to impose multiple punishments, imposition of such sentences does not violate the Constitution." *Albernaz v. United States*, 450 U.S. 333, 344 (1981).

When legislative intent is unclear, courts apply the test enunciated in *Blockburger v. United States*, 284 U.S. 299, 304 (1932) to construe the statutes. *See Hunter*, 459 U.S. at 367; *United States v. Bishop*, 66 F.3d 569, 573 (3d Cir.), *cert. denied*, 516 U.S. 1032 (1995). *Blockburger* states that, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to

---

3. Chorin's citation to *United States v. Busic*, 587 F.2d 577 (3d Cir. 1978) is misplaced because the holding in *Busic* that sentencing a defendant to consecutive sentences under 18 U.S.C. § 111 for assault with a dangerous weapon and under 18 U.S.C. § 924(c)(1) for use of a firearm to commit a felony violates the Double Jeopardy Clause where the dangerous weapon is a firearm and the felony is an assault is no longer good law. On rehearing this Court vacated its double jeopardy ruling. *See Busic*, 587 F.2d at 587-88, *aff'd in part, rev'd in part*, 466 U.S. 398 (1980). While we reached the same result on different grounds, namely that Congress did not intend to enhance a sentence under Section 924(c) where the predicate felony statute contains its own enhancement provision, and the Supreme Court affirmed this holding, Congress repudiated this result by amending Section 924(c) to make clear that the sentencing enhancement applies "irrespective of whether the Government had actually sought an enhancement under the predicate statute." *See United States v. Gonzales*, 520 U.S. 1, 10 (1997).

determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." 284 U.S. at 304. Under the *Blockburger* test, a court looks to the statutory elements of the crime charged to determine if there is any overlap. As the Supreme Court states in *Iannelli v. United States*:

> The test articulated in *Blockburger v. United States,* 284 U.S. 299 (1932), serves [the] function of identifying congressional intent to impose separate sanctions for multiple offenses arising in the course of a single act or transaction. . . . [T]he Court's application of the test focuses on the statutory elements of the offense. If each requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.

420 U.S. 770, 787 n. 17 (1975).

Imposing multiple punishments for possession of a precursor and attempting to manufacture a controlled substance comes close to constituting a double jeopardy violation. Indeed, two other Courts of Appeals have held that imposing multiple punishments for possession of a precursor and attempting to manufacture a controlled substance violates the Double Jeopardy Clause. *See United States v. Forester,* 836 F.2d 856, 860-61 (5th Cir. 1988); *United States v. Wilson,* 781 F.2d 1438 (9th Cir. 1986). The Court of Appeals in *Forester* explains that the:

> two counts against [defendant] involve successive steps in one criminal undertaking, the manufacture of methamphetamine. And although it is obvious that Congress made each offense a crime, no reason is suggested to us, and we are aware of none, which would support the proposition that Congress intended multiple punishments for a criminal who completes more than one interim step of a multi-step crime.

836 F.2d at 860-61.

However, in the present case, Chorin engaged in two criminal undertakings, rather than merely multiple steps in a single multi-step crime. That is, unlike in *Forester* and

*Wilson*, where the only reason defendant possessed the precursor was in order to attempt to manufacture the controlled substance, the convictions for possession of a precursor and attempt to manufacture a controlled substance in this case are not based on the same factual predicate act or transaction because Chorin possessed methylamine not only in an attempt to manufacture methamphetamine himself, but also to sell the methylamine to others. *See Forester*, 836 F.2d at 859 (stating that its holding is limited to the "specific, limited, and sharply defined facts of this case" where a petitioner possessed a precursor as a step in the process of manufacturing a controlled substance, and noting that its holding does not extend to cases where a petitioner also uses the precursor for resale).

According to the testimony of DeRewal and Gifford, Chorin possessed different methylamine liquid at different places for different purposes on different occasions. First, he manufactured methylamine liquid in the Philadelphia laboratory for sale to others knowing, or having reasonable cause to believe, that they would use it to manufacture methamphetamine. This occurred over approximately a one year and seven month period from March 1997 to October 1998. Second, Chorin possessed other methylamine, and created a laboratory in Germantown, in order to manufacture methamphetamine himself. Chorin did not possess this methylamine for the same extended period that he possessed the methylamine that he was using to sell to others. This distinction is reflected in the Indictment. Count One charges an attempt to produce methamphetamine in or about August 1998. Count Three charges possession of methylamine from March 1997 to October 1998.

Thus, since convictions under Count One and Count Three were not based on the same predicate act or transaction, *Blockburger* analysis is not even triggered. *See Blockburger*, 284 U.S. at 304. Further, as noted in *Forester*, it is obvious that Congress intended to make possession of a precursor and attempt to manufacture a controlled substance separate offenses, at least where they are not interim steps in a single multi-step crime, such as in the

present case. *See Forester*, 836 F.2d at 860-61. Therefore, there is no double jeopardy violation in this case.

### 3. *Brady and Newly Discovered Evidence Claims*

Chorin's claim that the government violated its constitutional duty to disclose exculpatory evidence under *Brady* by failing to provide statements made by Andrew Sidebotham lacks merit. *Brady* only requires that the government disclose information that is in its actual or constructive possession, *see Hollman*, 158 F.3d at 180-81, and Sidebotham did not provide information to the government until December 8, 1999, five days after the conclusion of Chorin's trial on December 3, 1999. Moreover, Chorin has not shown that there is a reasonable probability that the outcome of the proceeding would have been different had the information been disclosed. *See United States v. Bagley*, 473 U.S. 667, 682 (1985). Since Chorin has failed to establish prejudice, his claim that he is entitled to a new trial based on newly discovered evidence also lacks merit. *See Iannelli*, 528 F.2d at 1292.[4]

---

4. Chorin raises two additional claims. First, Chorin's claim that 21 U.S.C. § 841 is facially unconstitutional because the statute mandates that drug type and quantity be treated as sentence enhancement factors to be considered by the trial judge under the preponderance of the evidence standard in violation of *Apprendi* has been rejected by this Court. *See United States v. Kelly*, 272 F.3d 622, 624 (3d Cir. 2001) (noting that "the statute does not say who makes the findings or which party bears what burden of persuasion. Instead the law attaches effects to facts, leaving it to the judiciary to sort out who determines the facts, under what burden."). Further, the District Court did not abuse its discretion in denying Chorin's motion for a new trial on the grounds that his trial counsel was ineffective. The motion was untimely, unless it was based on a claim of newly discovered evidence, *see* Fed. R. Crim. P. 33, and this Court has expressed a preference that ineffective assistance of trial counsel claims be brought as collateral challenges under 28 U.S.C. § 2255, rather than as motions for new trials or on direct appeal because "[a]ttempting to shoehorn such [an ineffective assistance of counsel] claim into a Rule 33 newly discovered evidence motion is not an easy task." *United States v. DeRewal*, 10 F.3d 100, 104 (3d Cir. 1993).

## IV. Conclusion

For the reasons stated above, the judgment of the District Court will be affirmed.

A True Copy:
      Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*