**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 2 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

LESLEY LEE BECKER,

        Defendant-Appellant.

No. 03-3189

(D. Kansas)
(02-CV-3112-JAR)

**ORDER AND JUDGMENT**[*]

Before **KELLY, ANDERSON,** and **HENRY,** Circuit Judges.

Defendant-Appellant Lesley Lee Becker appeals from the district court's

denial of his 28 U.S.C. § 2255 motion to vacate, set aside or correct his sentence.

The issue before us is whether Mr. Becker has presented a potentially meritorious

claim for ineffective assistance of counsel. Mr. Becker claims that his counsel

failed to present expert testimony at sentencing challenging the government's

drug estimates. Because factual issues remain unclear, and under § 2255, the

district court must conduct an evidentiary hearing "[u]nless the motion and files

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

and records of the case conclusively show that the prisoner is entitled to no relief," we remand for an evidentiary hearing on his ineffective assistance claim.

## I

On March 31, 1997, police searched Mr. Becker's residence pursuant to a warrant. During the search, officers discovered acetone, ephedrine, pseudoephedrine, and muriatic acid, all chemicals used in the production of methamphetamine, as well as glassware, scales, and recipes for producing methamphetamine. Officers detected methamphetamine residue in a bottle, a zip-lock bag, a mixing bowl, and on the scales.

A jury found Mr. Becker guilty on five counts: (1) attempting to manufacture methamphetamine in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2; (2) maintaining a dwelling for the purpose of unlawfully manufacturing and storing methamphetamine in violation of 21 U.S.C. § 856(a)(2) and 18 U.S.C. § 2; (3) possessing with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; (4) possessing acetone with the intent to manufacture methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and (5) being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). We affirmed Mr. Becker's conviction on direct appeal. *United States v. Becker*, 230 F.3d 1224 (10th Cir. 2000).

At issue is the district court's calculation of how much methamphetamine to attribute to Mr. Becker. The Sentencing Guidelines provide that "[w]here there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance. In making this determination, the court may consider . . . the size or capability of any laboratory involved." USSG § 2D1.1 n.12. Because only methamphetamine residue was discovered at Mr. Becker's residence, the probation office utilized the forensics report of the Kansas Bureau of Investigation (KBI). The government offered this report to approximate the capability of the lab.

> The presentence report (PSR) noted that the KBI's chemist
>
> provided a theoretical yield produced by the quantity of muriatic acid the defendant had at his property and determined the defendant could have produced at least 23 pounds of methamphetamine, by following the recipe the defendant had in his possession. The U.S. Probation Office has used the most conservative estimate of 6 pounds of actual methamphetamine, which the defendant could have produced, to calculate the guideline in this case.

Supl. Vol. I, at 9, ¶ 28 (PSR).

Mr. Becker's counsel objected to the estimation of drug quantity, arguing that the offense level should reflect only the amount of actual drugs found at Mr. Becker's residence. However, Mr. Becker's counsel did not object to the KBI's methodology of estimating the amount of methamphetamine from the quantity of muriatic acid, and he presented no evidence of other methods or estimates.

3

The district court adopted the PSR, finding that

> the U.S. Probation Office has accurately calculated the guidelines in this case. By using the 160 ounces of muriatic acid to approximate the capability of the methamphetamine laboratory, the United States Probation Office took into account the amounts of the muriatic acid that the defendant likely used in a prior cook . . . .

> The U.S. Probation Office, with the assistance of the KBI Forensics Laboratory, approximated the capability of the methamphetamine laboratory in this case and provided for error on the defendant's part, resulting in a reduced quantity. The Court is satisfied the U.S. Probation Office appropriately calculated the guidelines in this matter.

*Id*. at 22-23, ¶¶ 20-21. The PSR attributed six pounds, or 2,718 grams, of methamphetamine to Mr. Becker. Mr. Becker's adjusted offense level of 38 and criminal history category of II resulted in a sentencing range of 262-327 months. Relying on the PSR, the district court sentenced Mr. Becker to concurrent sentences of 262 months' imprisonment on count one, 240 months' imprisonment on counts two and four, and 120 months' imprisonment on counts three and five.

On direct appeal, Mr. Becker "challenge[d] the trial court's determination of the approximated capability of the methamphetamine lab and argue[d] the resultant quantity calculation was not supported by the evidence." *Becker*, 230 F.3d at 1235. Noting that "[Mr.] Becker . . . failed to produce an expert of his own to challenge the proffered figures," we held that the drug estimate used to sentence Mr. Becker was supported by the record and was not clearly erroneous. *Id*. at 1236.

4

Mr. Becker filed a § 2255 petition, arguing that he received ineffective assistance of counsel at sentencing because his counsel failed to investigate the government's method of calculating drug quantities and failed to present expert testimony to challenge the calculations relied upon by the district court. The district court denied Mr. Becker's § 2255 petition without holding an evidentiary hearing. The district court found "that the method of drug calculation was appropriate" and concluded that "we cannot say that [Mr. Becker] was prejudiced by his counsel's failure to put on an expert or further investigate the government's calculation method. It cannot be said that a reasonable probability exists that if another expert had testified, the outcome would have been different." Rec. doc. 104, at 5-6 (Mem. and Order Denying Motion to Vacate Sentence, filed May 8, 2003). This Court granted Mr. Becker's request for a certificate of appealability.

## II

Mr. Becker reasserts his argument that he received ineffective assistance of counsel because his counsel failed to present expert testimony at sentencing challenging the government's method of estimating drug quantity.

As a preliminary matter, we reject the government's contention that we have already addressed Mr. Becker's claim on direct appeal and that we should

5

not reconsider it in a § 2255 motion. In bringing the present § 2255 action, Mr. Becker took to heart our observation on direct appeal that "[Mr.] Becker . . . failed to produce an expert of his own to challenge the [government's] proffered figures." *Id*. at 1236. We agree with the district court that although our "direct appeal analysis and decisions on the evidentiary issues have . . . bearing on [Mr. Becker's] § 2255 claims," the claims are separate and distinct. Rec. doc. 104, at 3. Mr. Becker has properly raised his ineffective assistance claim in a § 2255 motion. *United States v. Edgar*, 348 F.3d 867, 869 (10th Cir. 2003) ("With rare exception, a defendant must raise ineffective assistance of counsel claims in a collateral proceeding, not on direct appeal.") (citing *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc)); *see also Massaro v. United States*, 538 U.S. 500, 508 (2003) ("[F]ailure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255.").

We now turn to the merits of Mr. Becker's claim that he deserved an evidentiary hearing on his ineffective assistance claim. "Review in a section 2255 habeas action entails a two-step inquiry: [A] whether the defendant is entitled to relief if his allegations are proved; and [B] whether the district court abused its discretion by refusing to grant an evidentiary hearing." *United States v. Whalen*, 976 F.2d 1346, 1348 (10th Cir. 1992). We hold that Mr. Becker's

6

allegations can support a claim of ineffective assistance of counsel, and if they are proved, he may be entitled to relief. Therefore, under the stricture of the statute, we conclude that the district court abused its discretion, and we remand for an evidentiary hearing on the issue of whether Mr. Becker received ineffective assistance of counsel.

### A.

"To prevail on a claim of ineffective assistance of counsel, a convicted defendant 'must show that [1] counsel's representation fell below an objective standard of reasonableness,' and that [2] the deficient performance prejudiced the defendant. To establish prejudice, the defendant 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Prows*, 118 F.3d 686, 691 (10th Cir. 1997) (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984)).

### 1.    Deficient Performance

Mr. Becker claims that his counsel was deficient for failing to challenge the government's drug estimates with evidence of other, more reliable methods of estimation. The government based its estimate on the quantity of muriatic acid seized from Mr. Becker's house. Mr. Becker argues that expert testimony would establish that muriatic acid is not a precursor chemical, but rather a reactive agent

7

used sparingly in methamphetamine production, and that the drug estimates based on the quantity of muriatic acid overstated the methamphetamine lab's capability. Mr. Becker offers the affidavit of one chemist and the testimony of another chemist to support his argument that drug estimates based on muriatic acid are not reliable and that estimates based on the precursor pseudoephedrine are reliable. *See* Aplt's Br., ex. B-C; *id*. at B, ¶ 9 (Report of Dr. John Vasiliades, Forensic Toxicologist, dated Jan. 22, 2002) ("The use of hydrochloric acid (muriatic acid), which is not a starting agent or precursor, and is of unknown concentration to determine methamphetamine theoretical yield is both scientifically and forensically unacceptable.").

Several acceptable methods can be used to estimate the capability of a drug lab, and the district court may rely upon any estimate that has "some basis of support in the facts of the particular case." *United States v. Richards*, 27 F.3d 465, 469 (10th Cir. 1994) (internal quotation marks omitted); *see United States v. Havens*, 910 F.2d 703, 705 (10th Cir. 1990) ("[T]he trial court, upon proper testimony, may estimate the ultimate quantity of produceable drugs. This estimate should be equal to the amount of drugs produceable if the precursor chemicals possessed by the defendant were combined with proportionate amounts of the missing ingredients including processing equipment."); *see also United States v. Short*, 947 F.2d 1445, 1457 (10th Cir. 1991) (estimating lab capacity based on the

8

size of a glass flask); *United States v. Chorin*, 322 F.3d 274, 280 (3d Cir. 2003) (estimate based on amount of methylamine seized); *United States v. Coleman*, 148 F.3d 897, 902 (8th Cir. 1998) (estimate based on quantity of iodine seized). In estimating drug quantities, "a decision to rely on one precursor chemical rather than another does not render a quantity determination clearly erroneous." *Becker*, 230 F.3d at 1235 n.4. However, the "question is what each specific defendant could have actually produced, not the theoretical maximum amount produceable from the chemicals involved." *Havens*, 910 F.2d at 705.

"[W]hen choosing between a number of plausible estimates of drug quantity, none of which is more likely than not the correct quantity, a court must *err on the side of caution*." *Richards*, 27 F.3d at 469 (internal quotation marks omitted) (emphasis added). However, in this case the sentencing court received only one estimate of drug quantity from which to choose. *Cf. Havens*, 910 F.2d at 706 (holding that where government presented two experts and defendant presented one expert, "sufficient testimony was presented . . . to provide the district court with a *proper range of estimates*.") (emphasis added). Because Mr. Becker's counsel did not present expert testimony on this matter, the only drug estimate available to the district court was the government's estimate based on the quantity of muriatic acid seized.

Mr. Becker has sufficiently alleged, and the chemists' report and testimony

support his contention, that other, more reliable and conservative drug estimates were available to his counsel, and that his counsel neither investigated them nor presented them to the sentencing court. We conclude that counsel's failure to present this evidence may have constituted deficient performance. Because "[t]his is primarily a factual matter proper for the district court's determination," further proceedings in the district court are necessary. *United States v. Harfst*, 168 F.3d 398, 404 (10th Cir. 1999); *see Arredondo v. United States*, 178 F.3d 778, 788 (6th Cir. 1999) (observing that "the district court should hold an evidentiary hearing to determine whether a reasonable attorney . . . would have attempted to convince the sentencing court that [the defendant] was responsible" for a lesser quantity of drugs).

## 2. Prejudice

Mr. Becker argues that counsel's failure to present expert testimony about methodologies of drug estimation prejudiced him because had the district court considered such testimony, it would have chosen the more reliable and conservative methodology, resulting in a shorter sentence for Mr. Becker. In support of his arguments, Mr. Becker offers a chemist's affidavit that states that under a more reliable method of drug estimation, a maximum of 547 grams of methamphetamine could have been produced by Mr. Becker's lab. After adjustments, this quantity of methamphetamine would establish a base offense

level of 36, which, combined with Mr. Becker's criminal history category of II, results in a sentencing range of 210-262 months. This range is lower than the 262-327 month range under which Mr. Becker was sentenced. Although these ranges overlap, and Mr. Becker was sentenced to 262 months, it is impossible from this record to determine what sentence the district court would have given Mr. Becker had it considered a different range. *See Alaniz v. United States*, 351 F.3d 365, 368 (8th Cir. 2003) (holding that sentence falling within an area of overlap between correct and incorrect Guidelines ranges is "unreviewable *only if* the district court, at the time of sentencing, states unequivocally that it would impose the same sentence with or without the challenged calculation") (emphasis added).

Indeed, Mr. Becker could have been prejudiced by as much as 52 months. "[A]ny amount of [additional] actual jail time has Sixth Amendment significance." *Glover v. United States*, 531 U.S. 198, 203 (2001) (holding that defendant sentenced to 84 months under the 78-97 month range received an unlawful increase of between 6 and 21 months when, absent ineffective assistance of counsel, he would have been sentenced in the 63-78 month range); *Alaniz*, 351 F.3d at 368 (holding that defendant sentenced to 240 months under the 240-262 month range was prejudiced when, absent ineffective assistance of counsel, he would have been sentenced in the 210-262 month range).

11

Mr. Becker has sufficiently alleged that but for his counsel's failure to present evidence of other drug estimations, a reasonable probability exists that his sentencing would have been different. However, we cannot determine this as a matter of law on this record. "Under the law of this circuit, the prejudice analysis . . . focuses not solely on the failure to make an argument . . . but on the ultimate success of the argument," making further proceedings in the district court necessary. *Harfst*, 168 F.3d at 404 ("[W]hether defendant was prejudiced by counsel's failure to request a [sentencing] adjustment depends on whether the district court would have granted the request, a matter only the district court can decide.").

**B.**

Having decided that Mr. Becker's allegations of ineffective assistance of counsel, if proved, may entitle him to relief, we must consider whether the district court abused its discretion in denying him an evidentiary hearing. Under § 2255, the district court is required to conduct an evidentiary hearing "[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. In his § 2255 motion before the district court, Mr. Becker presented the chemists' report and testimony regarding the relative reliability of various methods of estimating drug quantity, and he showed that his counsel did not present such evidence at sentencing. On this record, our

12

case law requires the district court to grant an evidentiary hearing on Mr. Becker's ineffective assistance claim. *See United States v. Cervini*, No. 03-6144, 2004 WL 1790026, at *5 (10th Cir. Aug. 11, 2004) (explaining that an evidentiary hearing in a collateral attack is not required unless movant provides "a firm idea of what the testimony will encompass and how it will support a movant's claim.").

## III

Accordingly, we REMAND for an evidentiary hearing.

Entered for the Court,

Robert H. Henry
Circuit Judge