**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0462n.06
Filed: June 30, 2006

**Case No. 03-3950**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| SHANNON BENSON, | ) | DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| | ) | |

**BEFORE:  BATCHELDER and GRIFFIN, Circuit Judges; ZATKOFF, District Judge.**[*]

**Lawrence P. Zatkoff, District Judge.**  On September 10, 2002, Defendant-Appellant Shannon Benson entered a guilty plea to six counts of bank robbery and one count of use of a firearm during the commission of a crime of violence.  On June 25, 2003, the district court sentenced Defendant to 45 years of prison.  Defendant now appeals the district court's sentence.  Because the district court did not commit plain error in imposing this sentence and because the sentence was reasonable, we **AFFIRM**.

---

[*]The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I. BACKGROUND

### A. Bank Robberies

On August 31, 1999, at approximately 11 a.m., Defendant-Appellant Shannon Benson (hereinafter, "Defendant"), and two other individuals, Daniel Marshall and Bryan Oglesby, entered Farmers and Merchant Bank located at 3235 Alexander-Bellbrook Road, Dayton, Ohio. During the robbery, each of the robbers (including Benson) wore a disguise over his face and each carried a gun as he entered the bank. Once inside the bank, the robbers pointed the guns at the bank employees as they shouted profanities and ordered them to the floor. Once behind the teller counter, they emptied the contents of the teller drawers into bags. Bryan Oglesby then approached one of the tellers who was lying on the floor and demanded the keys to the vault. Another teller who was also on the floor, responded that she had the keys, and walked towards Bryan Oglesby. As she approached him, Oglesby grabbed her arm and pressed the gun he was carrying directly into her back as he escorted her to the vault area. Once inside the vault area the teller unlocked the vault door. After entering the vault, Oglesby pressed the gun directly into the back of the teller's head as she opened the combination lock of the safe that was located inside the vault. After she had unlocked the vault, Oglesby ordered the teller to step aside and warned her that if she moved, he would kill her. Oglesby then emptied the money that was in the safe into a bag and ordered the teller back to the area where the other employees were still lying on the floor. Defendant then shouted to one of the others, "Duke, do your thing." Oglesby then struck one of the tellers with the butt of his gun. Daniel Marshall then approached two of the tellers lying on the floor, instructed them to look up, and sprayed them with pepper spray. Daniel Marshall then approached a third teller and ordered her to raise her head. As the teller responded that she was trying to comply, Defendant

2

grabbed the teller by the hair and the gun he was carrying discharged. The teller was injured with a gunshot wound to her head. Defendant and the two others fled the bank in a car with approximately $217,562.

On February 4, 2000, at approximately 6:45 p.m., an unknown female approached the secured entrance of Liberty Savings Bank located at 4801 North Main Street, Dayton, Ohio for the second time that evening. She had entered the bank earlier, approached a teller and requested change for a ten dollar bill. When she entered the bank for a second time, Defendant immediately followed her. Once inside the bank, the female positioned herself at the far end of the teller counter, and both she and Defendant pulled out guns and ordered the customers to the floor. Defendant then asked for the supervisor to identify herself and at gunpoint, ordered her and the other employees to the vault.

While the female collected the money from the teller drawers, Defendant ordered the bank supervisor to open the vault. When the supervisor indicated that she did not have the combination, one of the tellers stepped forward to open the vault. As she was opening the vault, Defendant yelled at the teller to hurry up and hit her on the back of the head with the gun. After she had opened the vault, Defendant ordered the employees to the floor, collected money from the vault, and put it into a pillow case. Defendant and the female individual then fled from the bank with approximately $64,009.

On March 6, 2000, at approximately 2:19 p.m., Defendant and the same female accomplice entered Provident Bank located at 8220 Springboro Pike, Miami Township, Ohio. The female approached one of the teller windows and asked for change for a $100 bill. She then pulled out a semi-automatic gun, ordered everyone to the floor and proceeded to collect the money from the

3

teller drawers. At the same time, Defendant approached the bank manager, who was in her office. He ordered the manger to accompany him to a second office and directed the two bank employees to follow him to the area where the other employees and customers were lying on the floor. Defendant then demanded that the bank manager open the vault. The bank manager stated that she could not. A second employee stepped forward to open the vault. After the vault had been opened, Defendant and the manager entered the vault. While in the vault, Defendant became agitated and insisted that there had to be more money. When the manager indicated that there was no more money, Defendant struck her on the back of her head with his gun and ordered her to open the safety deposit boxes that were in the vault. He then emptied the contents of the vault into a bag. He and the female fled from the bank with approximately $61,044.

On May 4, 2000, at approximately 10:15 a.m., Defendant, the female accomplice, and an unknown male, entered the Huntington National Bank located at 800 West Wenger Road, Englewood, Ohio. The female entered the bank first, approached a teller window and requested change. Defendant then entered the bank followed by the third person. As the unknown male stood by the door, the female pulled out a semi-automatic gun and ordered everyone to the floor. At the same time, Defendant, who had also pulled out a gun, approached a bank employee who was seated at her desk near the teller counter. At gunpoint, he grabbed her by her arm and forced her to escort him to the manager's office. He then forced the manager, the bank employee, and the customer to the lobby area where he ordered them to lie down on the floor. Defendant, while holding the manager at gunpoint, ordered the manager to the vault and demanded that he produce the keys to the vault. When the manager indicated that he could not access the vault, another employee stepped

4

forward and opened the vault. Defendant then collected money from the vault and put it into a pillow case. He and the two other individuals fled from the bank with approximately $98,433.

On May 16, 2000, at approximately 3:45 p.m., the same female entered Bank One located at 806 West National Road, Dayton, Ohio, followed by Defendant. While talking on a cellular phone, the female approached the teller counter and asked for assistance with a transaction. In the meantime, Defendant entered the bank manager's office, where the bank manager was with a customer. He tapped the customer on her shoulder with a gun and ordered both the manager and the customer to the lobby. Defendant then instructed them to lie on the floor with the other employees and customers. He warned the bank employees and customers that if the police responded, they would all be killed. As the female associate emptied the money from the teller drawers, Defendant directed one of the tellers to the bank vault and forced her to open it. Once inside the vault, he ordered the teller to lie down on the floor while he emptied money from the vault into a bag. After he collected the money from the vault, he and the female forced the bank employees and customers to join the teller already inside the vault. Everyone was then ordered to lie down on the vault floor. After Defendant closed the vault door, one of the robbers' guns discharged inside the bank. Defendant and the female fled from the bank with approximately $181,837.

On December 6, 2000, at approximately 11:40 a.m., Jashawn Brown entered the Bank One branch located at 806 West National Road, Dayton, Ohio, and while standing in the lobby area of the bank, proceeded to use a cellular phone. A few minutes later, Defendant entered the bank and approached two employees who were in the bank manager's office. He forced them and bank patrons to the back area of the bank where he instructed them to lie on the floor. He then asked the bank manager to identify herself and led her to the teller drawers and bank vault. Upon receiving

5

a verbal instruction by Defendant, Jashawn Brown approached one of the tellers, pointed a gun at her, and directed her to step away from her drawer. Brown then jumped over the counter and ordered the teller to the area where the other employees and patrons were being held. Brown directed the teller to join the others on the ground and kept his gun pointed at them while Defendant collected the money from the teller drawers and bank vault. When Defendant was done collecting the money, both he and Jashawn Brown ordered all the employees and patrons, except the bank manager, into a closet. As Brown was securing the employees and patrons in the closet, Defendant led the bank manager to the kitchen area to collect the bank surveillance tapes. He then ordered the manager into a bathroom and threatened to kill her if she came out of the bathroom before five minutes had elapsed. Brown and Defendant fled from the bank with approximately $28,232.

**B. Arrest, Indictment, and Conviction**

On September 7, 1999, a criminal complaint was filed and an arrest warrant was issued authorizing the arrest of Defendant Shannon Benson. On December 6, 2000, following the bank robbery of the Bank One in Dayton, Ohio, Defendant Benson and co-Defendant Jashawn Brown were arrested. On February 7, 2001, the grand jury returned an Indictment charging Defendant with six counts of bank robbery (18 U.S.C. § 2113(a),(d)) and six counts of using a firearm during the commission of a crime of violence (18 U.S.C. § 924(c)(1)(A)(iii)). On September 10, 2002, following extensive pre-trial motions and evidentiary hearings, Defendant entered guilty pleas to each of the six bank robberies and to one count of using a firearm during the commission of a crime of violence.

**C. Sentencing**

6

On June 25, 2003, the district court imposed a total effective prison sentence of 45 years (540 months). The district court determined that the appropriate Guidelines range was 30 years (360 months) to life. JA at 86. In order to reconcile this Guidelines range with the 25-year statutory maximum prison sentence for each count of bank robbery, the district court imposed a sentence of 25 years in prison, to run concurrently, for the bank robberies charged in counts 1, 3, 5, 7, and 9. For the bank robbery charged in count 11, the district court imposed a sentence of 25 years in prison to run partially concurrently and partially consecutively, deferring the commencement of this sentence until December 6, 2010. By deferring this sentence until 2010, the district court effectively added 10 years to Defendant's sentence, thereby giving him a total of 35 years for the six bank robbery charges. Lastly, the district court imposed a mandatory, minimum, consecutive ten-year sentence on count 10, a firearms charge, for a total effective prison sentence of 45 years. Shortly after sentencing, Defendant timely filed the present appeal.

## II. LEGAL STANDARD

Sentencing decisions are reviewed for reasonableness. *United States v. Booker*, 543 U.S. 220, 261 (2005). Appellate courts look to 18 U.S.C. § 3553 as a guide to determine reasonableness. *Id.*

Where the defendant argues that his sentence should be vacated because the district court judge believed the Guidelines were mandatory but the defendant did not raise this argument in the district court, the Sixth Circuit will apply plain error review. *United States v. Barnett*, 398 F.3d 516, 525 (6th Cir. 2005). In reviewing for plain error, the Court must consider whether there was (1) an error in the district court, (2) whether the error was obvious or clear, (3) whether the error affected

7

defendant's substantial rights and (4) whether the error seriously affects the fundamental fairness, integrity, or public reputation of judicial proceedings. *Id.*

## III. ANALYSIS

**A. Whether the District Court Committed Plain Error by Treating the Guidelines as Mandatory**

In *United States v. Booker*, the Supreme Court rendered the Federal Sentencing Guidelines to be advisory and established that sentencing decisions are now to be reviewed for reasonableness. *United States v. Booker*, 543 U.S. at 261. In the months following *Booker*, this Court has explained the analysis required by *Booker*. In *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006), the Sixth Circuit held that sentences properly calculated under the Guidelines are entitled to a rebuttable presumption of reasonableness. Despite the Sixth Circuit's recent decision in *Williams*, however, in *United States v. Barnett*, 398 F.3d 516 (6th Cir. 2005), the Sixth Circuit stated that sentences which were imposed under the belief that the Guidelines were mandatory should be reviewed for plain error.

In the present case, Defendant was sentenced within the Guideline range, but was sentenced prior to *Booker*. Accordingly, the district judge imposed sentence under the belief that the Guidelines were mandatory, and pursuant to *Barnett*, this Court should review the sentence for plain error. In reviewing for plain error, the Court must consider whether there was (1) an error in the district court, (2) whether the error was obvious or clear, (3) whether the error affected defendant's substantial rights and (4) whether the error seriously affects the fundamental fairness, integrity, or public reputation of judicial proceedings. *See United States v. Barnett*, 398 F.3d at 525.

In analyzing the first and second prongs, the Sixth Circuit in *Barnett* concluded that the

district court in that case had erred by treating the Guidelines as mandatory, and that such an error was plain. In the present case, the district court likewise committed plain error in treating the Guidelines as mandatory and accordingly, the first and second prongs of the plain error analysis are satisfied.

The next question is whether the error affected defendant's substantial rights. In *Barnett*, the Sixth Circuit presumed that the defendant's rights had been substantially affected. The *Barnett* court explained:

> [W]e are convinced that the most prudent course of action in this case is to presume prejudice given the distinct possibility that the district court would have imposed a lower sentence under the new post-*Booker* framework and the onerous burden he would face in attempting to establish that the sentencing court would have imposed such a sentence.

*Id*. at 529. Despite the presumption of prejudice afforded the defendant in *Barnett*, the *Barnett* court explained that such a presumption might not be warranted in all cases.

> This is not to discount the possibility, however, that in other cases the evidence in the record will be sufficient to rebut the presumption of prejudice. While "an appellate court will normally be unable to assess the significance of any [sentencing] error that might have been made," we can imagine cases where the trial record contains clear and specific evidence that the district court would not have, in any event, sentenced the defendant to a lower sentence under an advisory Guidelines regime.

*Id*. (citation omitted); s*ee also United States v. Alford*, 436 F.3d 677 (6th Cir. 2006) (Finding that the district court committed harmless error in treating the Guidelines as mandatory where the district court would have sentenced the defendant to the same sentence regardless of *Booker*.). Based on the record from the sentencing hearing, we believe this is such a case where this Court should not presume prejudice.

At the sentencing hearing, the district judge created an extensive record of his reasons for sentencing within the Guidelines range of thirty years to life. The district judge stated:

> The Court agrees that the guidelines are wrong, that they curve and control discretion in a manner that I personally find improper. The Court finds that the guidelines unduly restrict the discretion of the Court, that they prohibit the Court from fashioning a sentence based upon the facts of the crime committed, the factors that brought the defendant before the Court, and that caused him to commit the crimes, that the sentencing guidelines do not allow this Court always to fashion a sentence that takes into consideration the rights of the victim, the rights of the community and the particular characteristics of the defendant. The sentencing guidelines do not always allow this Court to fashion a sentence that allows it, the Court, to address the four immutable principles of sentencing, safety, punishment, rehabilitation and deterrence. ***In this case, however, the Court finds that the sentencing guidelines and the Court's inclination are not in conflict.***

JA at 82-83 (emphasis added). The district judge then went on to sentence defendant to the statutory maximum of 25 years for each of the six bank robbery counts (with one of these 25 year sentences to run partially consecutive for an additional ten years), and to the statutory mandatory minimum of 10 years for the firearms count, for a total effective sentence of 45 years. Based on the district court's sentence of 45 years, which is 15 years above the Guidelines minimum sentence, and based on the sentencing record, we believe it is clear that even if the district judge had considered the Guidelines to be advisory, he would not have sentenced Defendant below the Guidelines range. Accordingly, Defendant cannot meet the third prong of the plain error analysis because he cannot show that the he was prejudiced by the district court's treatment of the Guidelines as mandatory. For this reason, Defendant has not satisfied the plain error test and the district court's sentence should be affirmed.

**B. Whether the District Court Wrongly Enhanced Defendant's Sentence**

Defendant asserts that the district court committed plain error by utilizing facts which had not been determined beyond a reasonable doubt in order to enhance Defendant's sentence.

10

Defendant's argument must fail. At the guilty plea hearing, the district court read into the record a detailed statement of the facts. JA at 49-58. Defendant assented to these facts and no objections were made. In accepting the pre-sentence report's recommendation regarding the leadership enhancement and firearms enhancement, the district court properly relied on the facts admitted by Defendant at the guilty plea hearing.

Regarding the criminal history calculation and enhancement, there likewise was no error. In *Apprendi v. New Jersey*, the Supreme Court explained that "***[o]ther than the fact of a prior conviction***, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (emphasis added). Accordingly, it was not error for the district court to rely on the criminal history calculation in order to enhance Defendant's sentence. For these reasons, the district court did not violate the Sixth Amendment in imposing Defendant's sentence.

**C. Whether The Consecutive Sentence for the Firearm Charge Violated *Apprendi***

Defendant argues that the district court violated *Apprendi v. New Jersey* and plainly erred in imposing a ten-year consecutive sentence regarding count 10, using a firearm during the commission of a crime of violence. Defendant asserts that the imposition of a ten-year consecutive sentence on the firearms offense improperly increased Defendant's sentence to beyond the 25-year maximum sentence permitted for bank robbery. Defendant's argument fails.

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Quite simply, the holding of *Apprendi* is not implicated by Defendant's ten-year sentence

11

for the firearms violation. *Apprendi* only applies where the penalty for a crime is increased beyond the statutory maximum. Defendant was sentenced to the statutory maximum of 25 years regarding each of the six bank robbery counts.[1] In sentencing Defendant to an additional ten years for the firearm offense in violation of 18 U.S.C. § 924(c)(1)(A), the district court did not increase Defendant's 25-year maximum sentence for bank robbery but instead added a consecutive sentence for a separate count. The district court acted properly in doing so and in accord with the applicable law. *See* 18 U.S.C. § 924(c)(1)(D) ("[N]o term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed."). Accordingly, the district court did not err in applying a ten-year consecutive sentence for the firearm offense, much less did it "clearly err" in doing so.

Additionally, and as explained above in Section B., no *Apprendi* violation was possible because any facts used to increase Defendant's sentence were admitted by the Defendant at the guilty plea hearing. Where a defendant has admitted the facts which were used to increase his sentence, there can be no *Apprendi* violation.

---

[1] Defendant was sentenced to a total effective sentence of 35 years for the six bank robbery counts, but was not sentenced to more than 25 years (the statutory maximum) on any one count of bank robbery. The district court accomplished this by sentencing five of the 25-year sentences to run concurrently, and one of the 25-year sentences to run partially concurrently and partially consecutively for an additional 10 years. With an additional ten-year sentence imposed for the firearms offense, Defendant's total effective sentence was 45 years.

12

**D. Whether Defendant's Sentence was Reasonable**

As a final matter, and pursuant to *Booker*, we consider whether Defendant's sentence was reasonable. Defendant pled guilty to six counts of bank robbery and one count of using a firearm during the commission of a crime of violence. The district court properly calculated the Guidelines range as being between thirty years and life. Pursuant to *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006), a sentence properly calculated under the Guidelines is entitled to a rebuttable presumption of reasonableness. Defendant has not challenged the reasonableness of the sentence and instead merely challenged the constitutionality of the various sentencing enhancements (See Section B.). Because the Court finds that the sentencing enhancements were properly calculated and were supported by the facts admitted by Defendant at the guilty plea hearing, and because Defendant offers no other challenge to the reasonableness of the sentence, Defendant has failed to rebut the presumption of reasonableness in this case. For this reason, we find that the sentence of the district court was reasonable and should be affirmed.

In considering the reasonableness of Defendant's 45-year sentence, we think it is important to consider once again the gravity of Defendant's crimes. Defendant committed the armed robbery of six different banks in and surrounding Dayton, Ohio. Defendant and his accomplices intimidated employees and customers through the threat and display of force. They also utilized force as they pepper sprayed bank tellers, struck bank tellers, discharged a gun while inside one of the banks, and shot one bank teller in the head. In addition to physically harming a number of bank employees, Defendant also caused great psychological harm to both bank employees and customers. Also, the Court should consider the amount of money stolen by Defendant. Over the course of all six robberies, Defendant stole over $500,000.

13

In crafting a sentence, the district court considered the serious nature of Defendant's crimes and the principles of punishment (safety, punishment, rehabilitation, and deterrence) and imposed a sentence of 45 years of prison. *See* JA at 83. This Court believes that the district court acted properly in reaching this sentence and that the district court's sentence was reasonable.

## IV. CONCLUSION

For the reasons stated above, we **AFFIRM** the sentence of the district court.

\\ca6cin4\unpub\Published\06a0462n-06.txt