2007 ME 84

**STATE of Maine**

v.

**Roger G. KEENE.**

Supreme Judicial Court of Maine.

Argued: Nov. 29, 2006.
Decided: July 10, 2007.

G. Steven Rowe, Attorney General, Donald W. Macomber, Asst. Atty. Gen. (orally), Lisa Marchese, Asst. Atty. Gen., Augusta, for State.

George A. Hess, Esq. (orally), The Hess Law Firm, Auburn, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.*

Majority: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, and SILVER, JJ.

Dissent: CALKINS, J.

**SAUFLEY, C.J.**

[¶ 1] The question before us is this: Is a defendant's Sixth Amendment right to trial by jury, as articulated by the United States Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and its progeny, violated by the imposition of *consecutive* sentences for separate crimes, resulting from judicial rather than jury fact-finding? We conclude that no constitutional violation occurs as long as the sentence for each individual crime does not exceed the statutory maximum imposed by the Legislature for that crime, even when the aggregate sentence exceeds the maximum sentence for any single crime.

[¶ 2] Roger G. Keene raises this issue in his appeal from a judgment of conviction entered in the Superior Court (Androscoggin County, *Warren, J.*) for manslaughter (Class A), 17–A M.R.S. § 203(1)(A) (2006), and kidnapping (Class A), 17–A M.R.S. § 301(1)(B)(1) (2006). He argues that 17–A M.R.S.A. § 1256 (1983 & Supp.2003),[1] which authorized the court to impose consecutive sentences for his manslaughter and kidnapping convictions, is unconstitutional as applied to his case. Keene also makes several arguments regarding his conviction and sentence, which we do not find persuasive and do not discuss further.[2] Rather, we focus our attention on Keene's constitutional challenge, and we affirm his judgment and sentence.

## I. BACKGROUND

[¶ 3] Viewing the evidence in the light most favorable to the State, *see State v.*

---

*Justice Howard H. Dana Jr. sat at oral argument and participated in the initial conference but retired before this opinion was certified.

1. Title 17–A M.R.S.A. § 1256 (1983 & Supp. 2003) has since been amended. *See* P.L.2005, ch. 329, § 4 (effective Sept. 17, 2005) (codified at 17–A M.R.S. § 1256 (2006)).

2. Contrary to Keene's contentions, the court did not abuse its discretion in (1) denying Keene's motions for a mistrial, which were based on the cumulative effect of allegedly prejudicial circumstances occurring before and during trial, *see State v. Allen*, 2006 ME 20, ¶ 22, 892 A.2d 447, 454 (denial of a motion for mistrial); (2) admitting an autopsy photograph in evidence over Keene's objection pursuant to M.R. Evid. 403, *see State v. Allen*, 2006 ME 21, ¶ 9 n. 3, 892 A.2d 456, 458–59 (admission of a photograph over a Rule 403 objection); or (3) denying Keene's oral motion for a change of venue, *see State v. Saucier*, 2001 ME 107, ¶ 14, 776 A.2d 621, 626 (denial of a motion for a change of venue). Furthermore, the evidence at trial was sufficient to support Keene's convictions. *See State v. Smen*, 2006 ME 40, ¶ 7, 895 A.2d 319, 321 (review for sufficiency of the evidence). Finally, although Keene argues that the court was barred under 17–A M.R.S.A. § 1256(3)(B) from imposing consecutive sentences for crimes committed during a single criminal episode, section 1256(3)(B) did not apply because manslaughter is not a specific intent crime. *See State v. Horr*, 2003 ME 110, ¶ 11, 831 A.2d 407, 411 (holding that unintentional crimes, which lack criminal purpose and a specific intent element, are excluded from the limitation set out in section 1256(3)(B)).

*Bouchard,* 2005 ME 106, ¶ 10, 881 A.2d 1130, 1134, the following facts are supported in the record. Roger Keene and the victim, a forty-two-year-old woman and the owner of a bar in Lewiston, had a relationship that lasted several months, but which ended in September of 2003. Keene did not want their relationship to end, although the victim had decided to end the relationship. On the night of September 11, 2003, in her bar, the victim broke up with Keene in a heated argument.

[¶ 4] Later that night, Keene met the victim outside in the alley behind the bar, where Keene's pick-up truck was parked. Keene and the victim, who was significantly smaller than Keene, struggled in the alley, ending with Keene punching the victim in the face and shoving her into a brick wall, rendering her semi-conscious. Keene then placed the victim in the back of his truck, hidden by a tonneau cover, and he began driving his truck toward his home in Sabattus.[3] As Keene was driving, the victim regained consciousness and banged on the truck's rear windshield. Keene slammed on the brakes, put the truck in reverse, and then reaccelerated forward, and the victim fell out of the truck and onto the road.[4] Keene left her on the road, later returning as a bystander when an ambulance arrived.

[¶ 5] The victim was found unconscious, lying in the middle of the road on Route 126 between Lewiston and Sabattus. She was lying on her back with her arms at her sides, with her body perpendicular to the road and perfectly centered in the driving lane, and with her clothes neat and in good condition.[5] When placed in an ambulance, the victim was able to state that she had been beaten and thrown from a vehicle. The victim was brought to Central Maine Medical Center and underwent surgery. She never regained consciousness and died nine days later. Her death was attributed to a rear-head injury acquired either from being slammed against the brick wall or from falling out of Keene's truck.

[¶ 6] Keene was indicted on December 2, 2003, for Class A manslaughter, 17–A M.R.S. § 203(1)(A), Class A kidnapping, 17–A M.R.S. § 301(1)(B)(1), and Class A attempted murder, 17–A M.R.S. §§ 152(1)(A), 201(1)(A) (2006). After seven days of trial, the jury found Keene guilty of manslaughter and kidnapping. The jury deadlocked on the attempted murder charge and the court declared a mistrial on that count.

[¶ 7] At the time of Keene's crimes, the statutory maximum sentence for any of the three Class A crimes individually, established through our case law, was twenty years, absent a finding that the crime was among "the most heinous and violent crimes committed against a person," in which case a sentence of up to forty years was justified. *State v. Schofield,* 2005 ME

---

3. Keene's account of the events in the alley changed several times during multiple interviews with the police. He initially claimed that the victim had given him a good-night kiss and then walked off to another bar. He then claimed that the victim had gotten into his truck, they had driven away, and she had accidentally fallen out of the truck at high speeds. He later claimed that the victim had fallen down some stairs while attempting to hit him.

4. Keene admitted during an interview with the police that he had intended for the victim to fall out of the truck or to fall back into the bed of the truck.

5. The State argued that the victim's condition showed that Keene had positioned her in the middle of the driving lane intending to conceal her injuries as a pedestrian-car collision, and had therefore committed attempted murder, 17–A M.R.S. §§ 152(1)(A), 201(1)(A) (2006). The night of September 11 was foggy, with poor visibility on Route 126.

82, ¶ 9, 895 A.2d 927, 930; [6] *State v. Lewis,* 590 A.2d 149, 151 (Me.1991); *see* 17–A M.R.S.A. § 1252(2)(A) (Supp.2003).[7] At the sentencing hearing, the court sentenced Keene to twenty years for manslaughter and sixteen years for kidnapping, with six years suspended and six years of probation. The court ordered that the two sentences be served consecutively based on Keene's probationary status and because the seriousness of Keene's crimes warranted a sentence in excess of the twenty-year maximum sentence for manslaughter. *See* 17–A M.R.S.A. § 1256(2)(B), (D).

## II. DISCUSSION

[¶ 8] Keene argues that because section 1256(2)(D) allowed the court to impose consecutive sentences based on the seriousness of his criminal conduct without a jury finding that the conduct warranted consecutive sentences, the statute is unconstitutional as applied under the Sixth Amendment, citing *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *Apprendi,* and *Schofield.*

[¶ 9] The line of cases cited by Keene require that if the sentence for a single crime is elevated beyond its statutory maximum based on factual findings other than a prior conviction, then, in order for the sentence to be consistent with the Sixth Amendment, the defendant must have the right to have the facts justifying the elevated sentence found by the jury beyond a reasonable doubt. *United States v. Booker,* 543 U.S. 220, 244, 125 S.Ct. 738, 160

L.Ed.2d 621 (2005); *Blakely,* 542 U.S. at 303–05, 124 S.Ct. 2531.

[¶ 10] Keene, in effect, argues that consecutive sentences raise the same Sixth Amendment concerns as does an individual sentence that has been elevated beyond its statutory maximum. We have not yet addressed whether the findings necessary to support the imposition of consecutive sentences must be made beyond a reasonable doubt by a jury, or judge if the jury is waived, before consecutive sentences may be imposed.

### A. Standard of Review

[¶ 11] Keene failed to raise his constitutional argument before the sentencing court, and thus, our review of the consecutive sentences is limited to obvious error. *See Schofield,* 2005 ME 82, ¶ 28, 895 A.2d at 935. An obvious error is one that affects substantial rights or results in substantial injustice. *Id.* In cases where a criminal defendant has allegedly been deprived of the right to have a jury determine facts that could potentially elevate the sentencing range available to the court, and where the procedures clarifying that right are in question or have been recently clarified, we will address the alleged error, even when it was not raised before the sentencing court. *See id.* ¶ 32, 895 A.2d at 936.

### B. The Sentencing Statutes

[¶ 12] At the time of Keene's crimes, both of which were Class A, the sentence for Class A crimes was as follows:

---

6. Keene was indicted in December of 2003, before our decision in *State v. Schofield,* 2005 ME 82, 895 A.2d 927. Thus, the State did not plead in Keene's indictment that his crimes were among the most heinous and violent, and the jury did not make that determination.

7. In 2004, section 1252(2)(A) was amended by P.L.2003, ch. 657, § 10 (effective July 30, 2004) (codified at 17–A M.R.S. § 1252(2)(A)

(2006)), to provide for a single maximum sentence of thirty years for Class A crimes. This amendment was intended to eliminate the constitutional questions presented by *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), by eliminating the two-tier sentencing system. L.D. 1844, Summary (121st Legis.2004).

In the case of a Class A crime, the court shall set a definite period not to exceed 40 years. The court may consider a serious criminal history of the defendant and impose a maximum period of incarceration in excess of 20 years based on either the nature and seriousness of the crime alone or on the nature and seriousness of the crime coupled with the serious criminal history of the defendant.

17–A M.R.S.A. § 1252(2)(A). Applying *Schofield* to this case, where the heinous nature of the offense was not tried to the jury, the maximum that the court could impose on either of the convictions was twenty years. Thus, the court acted within the available maximum for each crime when it sentenced Keene to twenty years for manslaughter and sixteen years for kidnapping. *See Schofield*, 2005 ME 82, ¶ 14, 895 A.2d at 931.

[¶ 13] When determining how the two sentences would be served, the court was guided by 17–A M.R.S.A. § 1256(2):

[T]he court shall state in the sentence of imprisonment whether a sentence shall be served concurrently with or consecutively to any other sentence previously imposed or to another sentence imposed on the same date. The sentences shall be concurrent unless, in considering the following factors, the court decides to impose sentences consecutively:

A. That the convictions are for offenses based on different conduct or arising from different criminal episodes;

B. That the defendant was under a previously imposed suspended or unsuspended sentence and was on probation, under incarceration or on a release program at the time the person committed a subsequent offense;

C. That the defendant had been released on bail when that person committed a subsequent offense, either pending trial of a previously committed offense or pending the appeal of previous conviction; or

D. That the seriousness of the criminal conduct involved in either a single criminal episode or in multiple criminal episodes or the seriousness of the criminal record of the convicted person, or both, require a sentence of imprisonment in excess of the maximum available for the most serious offense.

17–A M.R.S.A. § 1256(2).

[¶ 14] Applying these provisions, the court imposed consecutive sentences based on subsection (B) because Keene was on probation at the time of his criminal acts, and subsection (D) because the court determined that Keene's criminal conduct and criminal record were serious enough to consider a sentence in excess of the maximum twenty years available for either crime.

[¶ 15] Because the court made a factual determination in imposing consecutive sentences, we must address the question Keene has presented: whether the court's imposition of consecutive sentences of twenty and sixteen years, resulting in a total incarceration of thirty-six years,[8] carries with it the constitutional infirmity identified in *Apprendi* and *Blakely*, which involved single sentences that had been elevated beyond their statutory maximums. We begin with a review of Supreme Court jurisprudence.

---

**8.** Because the court suspended six years of Keene's sentence for kidnapping, Keene is to initially serve thirty years under his sentence.

C. Prior United States Supreme Court Jurisprudence

[¶ 16] The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to a trial by jury. U.S. CONST. amend. VI. This right to a jury has been made applicable to state criminal proceedings via the Fourteenth Amendment. *Duncan v. Louisiana,* 391 U.S. 145, 149–50, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); *see also* ME. CONST. art I, § 6.

[¶ 17] The Supreme Court's Sixth Amendment jurisprudence was significantly augmented in the wake of *Apprendi,* which extended a defendant's right to a trial by jury to the fact-finding used to make enhanced sentencing determinations. In *Apprendi,* the Supreme Court vacated a twelve-year sentence imposed for a firearms violation. 530 U.S. at 471, 491–92, 120 S.Ct. 2348. The maximum sentence for the violation was ten years, but the sentencing court enhanced the sentence pursuant to a "hate crime" statute, which allowed for an increased sentence of up to twenty years if the court found by a preponderance of the evidence that the crime was committed "with a purpose to intimidate ... because of race, color, gender, handicap, religion, sexual orientation or ethnicity." *Id.* at 468–69, 120 S.Ct. 2348 (quoting N.J. STAT. ANN. § 2C:44–3(e) (West Supp.1999–2000)). The Supreme Court found that the twelve-year sentence violated the Sixth Amendment because "any fact that increases the penalty for *a crime* beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. 2348 (emphasis added).

[¶ 18] The Court refined the meaning of the term "statutory maximum" in *Blakely,* where it reviewed a sentence imposed pursuant to a sentencing scheme that authorized a maximum sentence of ten years, but

no more than fifty-three months unless the sentencing court determined that certain aggravating factors warranted a longer term. *Blakely,* 542 U.S. at 299, 124 S.Ct. 2531. If the court imposed an "exceptional sentence," it was required to set forth supporting findings of fact and conclusions of law in its judgment. *Id.* The defendant, Blakely, was sentenced to ninety months in prison because the court, after a three-day bench hearing, made a factual finding that he had acted with "deliberate cruelty." *Id.* at 300–01, 124 S.Ct. 2531. Because Blakely's guilty plea alone was insufficient to justify the ninety-month sentence, the Supreme Court vacated the sentence and made clear that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Id.* at 303, 305, 124 S.Ct. 2531 (emphasis in original).

[¶ 19] The Supreme Court reaffirmed this basic principle in *Booker,* where the Court determined that the federal sentencing guidelines violated the Sixth Amendment because they imposed mandatory sentencing ranges based on factual findings made by the sentencing court. *Booker,* 543 U.S. at 233–35, 237–38, 125 S.Ct. 738. In *Booker,* the defendant was convicted of possession with intent to distribute more than fifty grams of crack cocaine, which carried a "base" sentence of between 210 and 262 months. *Id.* at 227, 125 S.Ct. 738. The court in a post-trial hearing, however, determined by a preponderance of the evidence that the defendant had been in possession of an additional 566 grams of crack and was guilty of obstruction of justice. *Id.* Consequently, the court elevated the sentence to thirty years. *Id.* The Supreme Court held that the sentencing guidelines were unconstitutional because they required the court to impose

an enhanced sentence based on factual determinations not made by the jury beyond a reasonable doubt. *Id.* at 243–45, 125 S.Ct. 738. Noting that it had "never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range," in which case "the defendant has no right to a jury determination of the facts that the judge deems relevant," *id.* at 233, 125 S.Ct. 738 the Supreme Court cured the defect in the sentencing guidelines by severing the provisions that made the guidelines mandatory, *id.* at 245–46, 125 S.Ct. 738.

[¶ 20] We applied the holdings of *Apprendi, Blakely,* and *Booker* in *Schofield.* Schofield was sentenced to an elevated term of twenty-eight years pursuant to 17–A M.R.S.A. § 1252(2)(A), based on the court's determination of the nature and seriousness of the manslaughter she committed. *Schofield,* 2005 ME 82, ¶¶ 7–9, 895 A.2d at 930. We vacated her sentence and held that, under *Apprendi,* determining whether a crime was "among the most heinous offenses committed against a person" was a question that the defendant had a right to have decided by a jury beyond a reasonable doubt. *Id.* ¶¶ 21, 27, 895 A.2d at 933, 935.

[¶ 21] More recently, the United States Supreme Court examined the reach of the *Apprendi* line of cases in *Cunningham v. California,* ─── U.S. ───, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007), where it held that California's determinate sentencing law violated the Sixth Amendment because it allowed the sentencing court to impose an elevated sentence based on aggravating facts that it found to exist by a preponder-

ance of the evidence. *Id.* at 860, 870–71, 127 S.Ct. 856. The court was directed under the sentencing law to start with a "middle term" and then move to an "upper term" only if it found aggravating factual circumstances beyond the elements of the charged offense. *Id.* at 862, 127 S.Ct. 856. Concluding that the middle term was the relevant statutory maximum, and noting that aggravating facts were found by a judge and not the jury, the United States Supreme Court held that the California sentencing law violated the rule set out in *Apprendi. Id.* at 871, 127 S.Ct. 856. Although the sentencing law gave judges broad discretion to identify aggravating factors, this discretion did not make the upper term the statutory maximum because the jury verdict alone did not authorize the sentence and judges did not have the discretion to choose the upper term unless it was justified by additional facts. *Id.* at 868–69, 127 S.Ct. 856.

D. Application of *Apprendi* to Consecutive Sentences

[¶ 22] The United States Supreme Court has yet to reach the question presented here: whether the rule of *Apprendi* applies to the imposition of consecutive sentences.[9] We find it significant, however, that the Supreme Court explicitly narrowed the issue in *Apprendi* so as to render the issue of consecutive sentences irrelevant to its analysis:

It is appropriate to begin by explaining why certain aspects of the case are not relevant to the narrow issue that we must resolve. First, the State has ar-

---

9. We initially held our review of this case pending the decision of the United States Supreme Court in the case of *Burton v. Stewart,* ─── U.S. ───, 127 S.Ct. 793, 166 L.Ed.2d 628 (2007). There, the defendant challenged the imposition of consecutive sentences as a violation of *Apprendi* because the court had de-

parted from a standard sentence based on its own factual determinations. *Id.* at 795–96. However, the Supreme Court did not reach the defendant's arguments because it held that the District Court had never had jurisdiction to consider the defendant's federal habeas petition. *Id.* at 799.

gued that even without the trial judge's finding of racial bias, the judge could have imposed consecutive sentences on counts 3 and 18 that would have produced the 12–year term of imprisonment that Apprendi received; Apprendi's actual sentence was thus within the range authorized by statute for the three offenses to which he pleaded guilty. The constitutional question, however, is whether the 12–year sentence imposed on count 18 was permissible, given that it was above the 10–year maximum for the offense charged in that count. The finding is legally significant because it increased—indeed, it doubled—the maximum range within which the judge could exercise his discretion, converting what otherwise was a maximum 10–year sentence on that count into a minimum sentence. The sentences on counts 3 and 22 have no more relevance to our disposition than the dismissal of the remaining 18 counts.

530 U.S. at 474, 120 S.Ct. 2348 (citations omitted). Thus, it appears that the Supreme Court did not intend its holding in *Apprendi* to be extended outside the narrow issue before it: whether a court has impermissibly exceeded the statutory maximum sentence *for a particular crime* based on factual determinations not submitted to a jury and proved beyond a reasonable doubt. *See United States v. Chorin,* 322 F.3d 274, 279 (3d Cir.2003), *cert. denied,* 540 U.S. 857, 124 S.Ct. 158, 157 L.Ed.2d 104 (2003); *United States v. McWaine,* 290 F.3d 269, 275–76 (5th Cir. 2002), *cert. denied,* 537 U.S. 921, 123 S.Ct. 311, 154 L.Ed.2d 210 (2002); *United States v. White,* 240 F.3d 127, 135 (2d Cir.2001). Furthermore, because the Supreme Court did not address the issue of consecutive sentences in *Blakely* or *Booker,* these cases did nothing to expand the rule of *Apprendi,* which addressed only sentences for individual crimes.

[¶ 23] The federal circuit courts that have addressed the issue before us agree that the holdings in the *Apprendi* line of cases do not apply to consecutive sentences. *See, e.g., United States v. Davis,* 329 F.3d 1250, 1254 (11th Cir.2003) (per curiam), *cert. denied,* 540 U.S. 925, 124 S.Ct. 330, 157 L.Ed.2d 225 (2003); *Chorin,* 322 F.3d at 279; *United States v. Noble,* 299 F.3d 907, 909–10 (7th Cir.2002); *Saccoccia v. United States,* 42 Fed.Appx. 476, 482 (1st Cir.2002) (per curiam), *cert. denied,* 537 U.S. 1031, 123 S.Ct. 576, 154 L.Ed.2d 447 (2002); *United States v. Diaz,* 296 F.3d 680, 684–85 (8th Cir.2002), *cert. denied,* 537 U.S. 940, 123 S.Ct. 43, 154 L.Ed.2d 247 (2002); *McWaine,* 290 F.3d at 275–76; *United States v. Campbell,* 279 F.3d 392, 401–02 (6th Cir.2002); *United States v. Buckland,* 289 F.3d 558, 570–72 (9th Cir.2002); *White,* 240 F.3d at 135; *cf. United States v. Jackson,* 60 Fed.Appx. 726, 728 (10th Cir.2003), *cert. denied,* 540 U.S. 851, 124 S.Ct. 136, 157 L.Ed.2d 92 (2003); *United States v. Angle,* 254 F.3d 514, 518–19 (4th Cir.2001), *cert. denied,* 534 U.S. 937, 122 S.Ct. 309, 151 L.Ed.2d 230 (2001). Nor does it appear that the federal circuit courts view *Blakely* or *Booker* as having changed the analysis of how consecutive sentences are ordinarily viewed under *Apprendi,* as evidenced by post-*Booker* decisions. *See, e.g., United States v. Dees,* 467 F.3d 847, 854 (3rd Cir.2006); *Abrams v. United States,* 194 Fed.Appx. 718, 722 (11th Cir.2006) (per curiam), *cert. denied,* —— U.S. ——, 127 S.Ct. 1012, 166 L.Ed.2d 763 (2007); *United States v. Benson,* 186 Fed.Appx. 648, 655 (6th Cir.2006); *United States v. Woods,* 440 F.3d 255, 260–61 (5th Cir.2006); *see also United States v. Fifield,* 432 F.3d 1056, 1066–67 (9th Cir. 2005), *cert. denied,* 547 U.S. 1122, 126 S.Ct. 1937, 164 L.Ed.2d 684 (2006); *United States v. Carr,* No. 02–0106, 2006 WL

401818, at *5, 2006 U.S. Dist. LEXIS 6407, at *16–17 (D.D.C. Feb. 21, 2006).

[¶ 24] The majority of other state courts that have addressed this question are in agreement that *Apprendi* and its successors are limited to sentences for individual crimes, and *Apprendi* does not apply to judicial determinations regarding the sequence in which discreet sentences for multiple crimes are to be served. *See, e.g., Vandergriff v. State,* 125 P.3d 360, 363 (Alaska Ct.App.2005); *Hall v. State,* 823 So.2d 757, 764 (Fla.2002); *State v. Kahapea,* 111 Hawai'i 267, 141 P.3d 440, 452–53 (2006), *reconsideration denied,* 111 Hawai'i 316, 141 P.3d 489 (2006); *State v. Jacobs,* 644 N.W.2d 695, 699 (Iowa 2001); *State v. Bramlett,* 273 Kan. 67, 41 P.3d 796, 797–98 (2002); *Commonwealth v. Lepper,* 60 Mass.App.Ct. 36, 798 N.E.2d 1030, 1040 (2003), *review denied,* 441 Mass. 1102, 803 N.E.2d 332 (2004); *State v. Higgins,* 149 N.H. 290, 821 A.2d 964, 975–76 (2003); *cf. People v. Murray,* 5 Misc.3d 636, 785 N.Y.S.2d 675, 677 (N.Y.Sup.Ct.2004), *aff'd,* 37 A.D.3d 247, 829 N.Y.S.2d 106, 106 (N.Y.App.Div.2007).

[¶ 25] One state in disagreement is Ohio, which distinguished its own consecutive sentencing law as unique because the law mandated that the court make certain findings of fact before it could depart from imposing concurrent sentences.[10] *State v. Foster,* 109 Ohio St.3d 1, 845 N.E.2d 470, 491 (2006), *cert. denied,* —— U.S. ——, 127 S.Ct. 442, 166 L.Ed.2d 314 (2006). We are not persuaded by the Ohio court's analysis. *See State v. Tanner,* 210 Or.App. 70, 150 P.3d 31, 37 n. 6 (2006) (noting that several jurisdictions have held that *Apprendi* does not apply to sentencing statutes that require factual findings before a court may impose consecutive sentences). The threshold question is whether the court has impermissibly "increase[d] the penalty for a crime beyond the prescribed statutory maximum" by using factual determinations not found by the jury beyond a reasonable doubt, other than from a prior conviction, a guilty plea, jury verdict, or admission by the defendant. *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348; *see Booker,* 543 U.S. at 244, 125 S.Ct. 738. The court's decision to require that separate sentences be served consecutively in no way increases the penalties for the individual crimes.

[¶ 26] Specifically addressing Maine law, we find no basis for applying *Apprendi* and its progeny to the manner in which consecutive sentences were imposed pursuant to 17–A M.R.S. § 1256(2). Consecutive sentences are separate punishments for different offenses, *State v. Senske,* 692 N.W.2d 743, 746–47 (Minn.Ct. App.2005), *review denied,* 2005 Minn. LEXIS 302 (May 17, 2002), and two sentences do not become a single sentence by virtue of their running consecutively, *see People v. Wagener,* 196 Ill.2d 269, 256 Ill. Dec. 550, 752 N.E.2d 430, 441–42 (2001),

---

**10.** One other state, Washington, has held that *Apprendi* applies to the imposition of consecutive sentences under the state's sentencing statutes for nonserious violent felonies, where the defendant enjoys a "statutory presumption" of concurrent sentences and where the court must look to a special sentencing scheme for "exceptional" sentences and make certain factual findings in order to impose consecutive terms. *In re VanDelft,* 158 Wash.2d 731, 147 P.3d 573, 578–79 (2006), *cert denied,* —— U.S.——, 127 S.Ct. 2876, 167 L.Ed.2d 1172 (2007). Washington has also held, however, that *Apprendi* does not apply under the state's sentencing statutes for serious violent felonies, where consecutive sentences are mandated if a court finds that the crimes arose from "separate and distinct criminal conduct" and where the defendant does not enjoy a statutory presumption of concurrent sentences. *Id.; State v. Cubias,* 155 Wash.2d 549, 120 P.3d 929, 930–32 (2005).

*cert. denied,* 534 U.S. 1011, 122 S.Ct. 498, 151 L.Ed.2d 408 (2001); *cf. State v. Prewara,* 687 A.2d 951, 955–56 (Me.1996) (vacating consecutive sentences for the failure to articulate the maximum periods of incarceration for each sentence). Thus, the principles underlying *Apprendi* do not apply to consecutive sentences because a judge's decision on how two separate sentences for two distinct crimes shall be served is entirely different from the jury's determination of whether the elements of a crime, necessary for a particular sentence for that crime, have been committed. *See United States v. Feola,* 275 F.3d 216, 220 n. 1 (2d Cir.2001) ("[T]he vice in *Apprendi* was the imposition of a sentence on a single count (Count 18) in excess of the statutory maximum for that count."); *Tanner,* 150 P.3d at 39 (the core concern of *Apprendi* is that the jury determine every element for each crime charged, not that the jury determine the manner in which sentences for separate offenses are to be served). Although a defendant has a constitutional right to have a jury determine whether all the elements of a crime have been committed, including those relevant to an elevated sentence, a defendant does not have a constitutional right to serve concurrent sentences for multiple violent offenses. *McWaine,* 290 F.3d at 276; *White,* 240 F.3d at 135.

### E. Review of the Sentence Imposed on Keene

[¶ 27] The statutory maximum for each of Keene's offenses, pursuant to *Schofield,* was twenty years. Keene was not sentenced to more than twenty years for either crime. He received a cumulative term of thirty-six years, less than the forty-year aggregate of the two maximum possible sentences. The court imposed the consecutive terms based both on Keene's

probationary status, which Keene does not dispute, and the serious nature of his crime. Although the question of whether a crime was particularly serious is one of fact, *Schofield,* 2005 ME 82, ¶ 22, 895 A.2d at 933, *Apprendi* does not bar the court from making a factual finding to determine whether consecutive sentences should be imposed.

[¶ 28] In sum, we conclude that the Sixth Amendment right to have a jury determine whether the State has proved each element of a crime necessary to expose the defendant to the sentence imposed for that crime is not implicated by judicial determinations regarding the sequence by which multiple sentences are to be served, provided that each individual sentence falls within its statutory maximum. "Judicial factfinding does not, on its own, violate the Sixth Amendment, even when that factfinding is the basis for enhancing a defendant's sentence." *Fifield,* 432 F.3d at 1066.

[¶ 29] Because *Apprendi* does not render the imposition of Keene's consecutive sentences unconstitutional, we affirm the court's sentence pursuant to 17–A M.R.S. § 1256.

The entry is:

Judgment and sentence affirmed.

CALKINS, J., dissenting.

[¶ 30] I respectfully dissent. In my view, the trial court was required to impose concurrent sentences on Keene unless a jury found, by proof beyond a reasonable doubt, one of the required elements set forth in 17–A M.R.S.A. § 1256(2) (1983 & Supp.2003).[11] Under the sentencing structure of section 1256(2), a court cannot impose consecutive sentences unless the court finds

---

11. The statute is set forth in the Court's opinion.

facts in addition to those facts that led to the convictions. In this case, the sentencing court relied on two additional facts to justify consecutive sentences: (1) Keene was on probation, and (2) the seriousness of his conduct and his record "require consideration of and a sentence in excess of the maximum available for the most serious offense." [12]

[¶ 31] Because this additional fact-finding is required under section 1256(2) before a defendant can be sentenced to a longer period of incarceration than would be permitted for concurrent sentences, the recent Sixth Amendment jurisprudence of the United States Supreme Court and this Court mandates that those additional facts be proved beyond a reasonable doubt and before a jury, unless waived by the defendant. *See Blakely v. Washington,* 542 U.S. 296, 303–04, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *State v. Schofield,* 2005 ME 82, ¶¶ 20–21, 895 A.2d 927, 933.

[¶ 32] Section 1256(2) implicates *Apprendi, Blakely,* and *Schofield* because of its presumption that sentences are concurrent unless additional facts are found. Section 1256(2) means that the statutory maximum sentence, for *Apprendi, Blakely,* and *Schofield* purposes, is the maximum sentence that could be imposed on the individual convictions. Keene was convicted of two offenses that are classified as Class A offenses, and at the time the offenses carried maximum sentences of twenty years, unless a jury made the additional finding that those offenses were "most heinous and violent." *See Schofield,* 2005 ME 82, ¶ 9, 895 A.2d at 930. As the Court notes, the State did not plead or prove "most heinous and violent," and therefore, twenty years was the maximum sentence that could be imposed on each offense. The impact of section 1256(2) is that twenty years is the maximum total for the two offenses because the sentences must be imposed as concurrent sentences unless an additional element in section 1256(2) is proved. Keene was sentenced to a total of thirty-six years, and, therefore, his sentence exceeds by sixteen years the maximum sentence that section 1256(2) allows without additional fact-finding.

[¶ 33] Because it is the presumption of concurrent sentences in section 1256(2) that implicates the *Apprendi* line of cases, many of the cases cited by the Court are not on point. Most of the jurisdictions cited do not have a sentencing scheme providing that sentences are concurrent and allowing consecutive sentences only when certain additional facts are found. The federal Sentencing Guidelines do not create a presumption of concurrent sentences. *See United States v. Chorin,* 322 F.3d 274, 278 (3d Cir.2003), *cert. denied,* 540 U.S. 857, 124 S.Ct. 158, 157 L.Ed.2d 104 (2003) ("[T]he Supreme Court has recognized that there is a presumption that, when Congress creates two distinct offenses, it intends to permit cumulative sentences."); U.S. SENTENCING GUIDELINES MANUAL § 5G1.2(d) (2006).

[¶ 34] Similarly, many of the state cases upholding consecutive sentences that were challenged as violating *Apprendi* involve sentencing statutes that do not mandate that the sentences be concurrent unless certain facts are found. *See, e.g., State v. Jacobs,* 644 N.W.2d 695, 699 (Iowa 2001); *State v. Bramlett,* 273 Kan. 67, 41 P.3d 796, 797–98 (2002). Some courts, however, conclude that *Apprendi* is not violated

---

**12.** Probationary status is a factor in 17–A M.R.S.A. § 1256(2)(B) (Supp.2003), and the "seriousness of the criminal conduct ... or the seriousness of the criminal record" requiring "a sentence of imprisonment in excess of the maximum available for the most serious offense," is the factor stated in 17–A M.R.S.A. § 1256(2)(D) (1983).

**410**

even when the sentencing statute presumes concurrent sentences. *See, e.g., State v. Wagener,* 196 Ill.2d 269, 256 Ill. Dec. 550, 752 N.E.2d 430, 438, 441–42 (2001), *cert. denied,* 534 U.S. 1011, 122 S.Ct. 498, 151 L.Ed.2d 408 (2001); *State v. Tanner,* 210 Or.App. 70, 150 P.3d 31, 32–33, 39–40 (2006).

[¶ 35] At least two jurisdictions have held that consecutive sentences violate the Sixth Amendment because additional facts have to be found before the sentences can be imposed to run consecutively. The Ohio statute at issue in *State v. Foster,* 109 Ohio St.3d 1, 845 N.E.2d 470, 490–91 (2006), *cert. denied,* —— U.S. ——, 127 S.Ct. 442, 166 L.Ed.2d 314 (2006), is similar to our statute in that a court must make factual determinations before imposing consecutive sentences. Likewise, the Washington statute for nonserious violent felonies requires that the sentences be concurrent unless the court finds additional facts, and the Washington Supreme Court thus held that *Blakely* applies to consecutive sentences. *In re VanDelft,* 158 Wash.2d 731, 147 P.3d 573, 578–79 (2006), *cert. denied,* —— U.S. ——, 127 S.Ct. 2876, 167 L.Ed.2d 1172 (2007). In my view, the Ohio and Washington courts ruled correctly. I would join this minority view.

[¶ 36] When, as here, a court is considering the imposition of consecutive sentences based in whole or in part on the factor of section 1256(2)(D) regarding whether the seriousness of the offense or the criminal record warrants a sentence in excess of the maximum, the defendant must be given the opportunity to have that fact decided by a jury. Furthermore, the fact must be proved beyond a reasonable doubt. Therefore, I would vacate the sentences and remand for resentencing.